[No. 1080-2.   Division Two.   December 31, 1974.]

KENNETH E. SHEA, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

F. G. *Enslow* (of *Griffin & Enslow*), for appellant.

*Slade Gorton, Attorney General,* and *Gomer L. Cannon, Assistant,* for respondent.

PETRIE, J.—Kenneth E. Shea sustained an industrial injury to his right shoulder girdle and to the cervical region of his spine on April 29, 1964, when he fell from a beam, landing on his head on concrete below. His claim was ultimately closed by the Department of Labor and Industries on March 24, 1966, with a permanent partial disability award of 25 percent of the amputation value of the right arm at the shoulder and 5 percent of the maximum allowable for unspecified disabilities. In 1970, the claim was reopened, Mr. Shea was provided with further treatment, and on August 3, 1971, the claim was closed with a permanent partial disability award of 30 percent of the amputation value of the right arm at the shoulder and 10 percent of the maximum allowable for unspecified disabilities, less the prior award paid.

On appeal to the Board of Industrial Insurance Appeals, the department's last closing order was sustained. Mr. Shea's appeal to the Superior Court for Pierce County was dismissed after the trial court concluded that the evidence was insufficient as a matter of law to establish a prima facie case to submit to the jury.

Mr. Shea's appeal to this court raises the same issue as was presented to the trial court. He contends that the evidence of the physician who has treated him regularly since 1961, is sufficient to establish, prima facie, his right to pension benefits as a totally and permanently disabled workman under the workmen's compensation act. We review that evidence.

Asked to express an opinion of Mr. Shea's ability to work, taking into consideration the 1964 injury and the

effect it had upon him as of August 3, 1971, the attending physician declared:

As of August, 1971, I would say this man definitely could not have performed his usual occupation and could not have performed any work that required any degree of the use of his arm, that is, any degree of stress in using the arms.

Immediately following this response, Mr. Shea's work history was explored with the attending physician. That work history included hard labor all his life, working in the woods and in construction as a hod carrier as a "scaffold man" for 25 years. After the physician was advised that Mr. Shea's formal education terminated at the 11th grade, and was made aware that he was 59 years of age, the following testimony was elicited:

Q Is there anything in his educational background, coupled with his work history, and taking into consideration the extent of his injury, that would indicate that he is capable of carrying on a gainful occupation as of August 3, 1971?

A I would say that with everything coupled together he is not able to carry on anything gainful.

Quite obviously, as thus presented, there was sufficient evidence for the jury to find Mr. Shea was totally and permanently disabled on August 3, 1971, as a result of his 1964 injury. *Fochtman v. Department of Labor & Indus.*, 7 Wn. App. 286, 499 P.2d 255 (1972).

However, the fact pattern is complicated by another physiological problem. As early as 1961 (3 years prior to this industrial injury) Mr. Shea was suffering from, and was under active medical treatment for, a degenerative vascular disease and resultant hypertension. It is uncontroverted that this vascular problem and its sequelae in subsequent years are causally not related to the 1964 injury. It is also clear from the testimony of Mr. Shea's attending physician —and disregarding any disability attributable to the 1964 industrial injury—as early as November 1965, Mr. Shea could not have worked at any occupation on a reasonably

continuous basis solely because of the progressively degenerative conditions causally related to the preexisting vascular disease. The same physician testified—and his is the only medical testimony which predates the 1964 injury—that prior to Mr. Shea's industrial injury, he was able to work, medication was keeping his blood pressure "within a fairly reasonable range," and to that extent at least he was not suffering from any disability in any degree.

Thus, viewing the evidence in a light most favorable to the workman (which we must), we visualize him as suffering from two totally independent conditions, each of which is progressively causing increasingly serious disabilities. On the one hand, disregarding his industrial injury and the effects thereof, he was effectively removed from the labor market as early as November 1965 by reason of a condition which preexisted and was not affected by the industrial injury, but which, nevertheless became seriously disabling after the 1964 injury. On the other hand, disregarding the preexisting condition and the subsequent effects thereof, he was also effectively removed from the labor market on or about August 1971 by reason of the disability attributable to the 1964 injury.

The department contends, as a matter of law, Mr. Shea is not entitled to pension benefits under the workmen's compensation act because several years prior to the time his claim was last closed by the department he was in fact totally and permanently disabled as a result of disabilities entirely unrelated to his 1964 injury. Thus, the department's contention continues, the 1964 industrial injury cannot possibly be the proximate cause of his total disability. Mr. Shea contends, on the other hand, that he should not be denied pension benefits under the workmen's compensation act (where the evidence establishes that he is totally and permanently disabled as a result of his industrial injury) simply because another totally unrelated condition *also* rendered him totally and permanently disabled prior to the last closing of his industrial claim.

414

We agree with Mr. Shea and therefore remand this matter to superior court for presentation to a factfinding body to determine whether or not he was totally and permanently disabled on or about August 3, 1971, as a result of his 1964 injury.

■ We start with the obvious—and oft-repeated—concepts that the workmen's compensation act was designed to provide benefits not only to workmen with no prior physical or mental impediments, but also to workmen who may be afflicted with preexisting physical or mental infirmities or disabilities, *Klippert v. Industrial Ins. Dept*, 114 Wash. 525, 196 P. 17 (1921); and that the remedial and beneficial purposes of the act should be liberally construed in favor of workmen and beneficiaries. *Gaines v. Department of Labor & Indus.*, 1 Wn. App. 547, 463 P.2d 269 (1969); *Eyle v. Department of Labor & Indus.*, 10 Wn. App. 449, 519 P.2d 1020 (1974). It is a fundamental principle of workmen's compensation acts that if the injury complained of is a proximate cause of the *disability* for which compensation is sought, the previous physical condition of the workman is immaterial and recovery may be had for the full disability independent of any preexisting weakness. *Miller v. Department of Labor & Indus.*, 200 Wash. 674, 94 P.2d 764 (1939); *Fochtman v. Department of Labor & Indus., supra.*

In the case at bench the workman is seeking recovery for a disabling condition in his right shoulder girdle and the cervical region of his back—not for any disabling condition in his cardio-vascular system. Substantial evidence in the record demonstrates that on or about August 3, 1971, the regions of his body disabled because of the 1964 injury deteriorated to the point that he could be classified as a totally and permanently disabled workman under the workmen's compensation act by reason thereof—and independently of any other admittedly seriously disabling conditions. We see no reason why the workman should be denied the opportunity to present that evidence to a fact-

finding body, which may or may not accept his version of the evidence.

The department's real contention is that after the physician described Mr. Shea as being *permanently* totally disabled in 1965 because of nonindustrially caused disabilities, he cannot thereafter also declare that in 1971 Mr. Shea *became permanently* totally disabled because of disabilities causally related to the 1964 injury. The two conclusions by the same witness do have a superficial appearance of inconsistency, but do not create a genuine inconsistency.

In this jurisdiction, when disability crosses the line from partial to total, the essential standard applied by the physician or other expert who evaluates the workman is converted from "loss of bodily function" to "loss of earning power." *Franks v. Department of Labor & Indus.*, 35 Wn. 2d 763, 215 P.2d 416 (1950). Thus, theoretically at least, a concert pianist, a typist, a butcher, and a second loader on a logging show all suffer the same statutory measure of partial disability from a given injury which produces a given measure of partial loss of use of a finger. However, when measuring the effect of that injury in terms of total disability, a whole host of other circumstances and possible contributing factors must be considered. *Fochtman v. Department of Labor & Indus., supra.*

When the character and quantum of that evidence indicate the workman's inability to perform reasonably obtainable work suitable to his qualifications and training, he is said to be totally disabled. When a significantly contributing cause of that inability is an industrial injury or disease, the workman is entitled to receive total disability benefits under the workmen's compensation act, regardless of the fact that other circumstances and conditions may also be considered contributing causes of that inability.

When the disabling condition proximately caused by an injury is no longer remedial and its character has expectedly an unchangeable existence, the resultant disability is said to be permanent. *Hiatt v. Department of Labor & Indus.*, 48 Wn.2d 843, 297 P.2d 244 (1956). When the total-

ity and permanency coalesce, the individual is said to be totally and permanently disabled, and when those qualities coalesce and an industrial injury is a significantly contributing cause of the resultant inability to perform reasonably obtainable work suitable to his qualifications and training, regardless of the other causes, the workman is entitled to pension benefits under the workmen's compensation act.

Mr. Shea's attending physician has described just such a coalescence. Mr. Shea should, therefore, be entitled to present that evidence to a factfinding body.

Judgment of dismissal is reversed.

PEARSON, C.J., and ARMSTRONG, J., concur.

Petition for rehearing denied February 24, 1975.

Review denied by Supreme Court May 23, 1975.