OPINIONS OF THE SUPREME COURT OF OHIO
      The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
      Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
      NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

The State ex rel. Waddle, Appellee, v. Industrial Commission of
Ohio et al., Appellants.
[Cite as State ex rel. Waddle v. Indus. Comm. (1993),      Ohio
St.3d      .]
Workers' compensation -- Application for permanent total
      disability compensation -- Mere presence of nonallowed
      disabling conditions does not automatically foreclose a
      finding of permanent total disability.
      (No. 92-2081 -- Submitted July 28, 1993 -- Decided October
3, 1993.)
      Appeal from the Court of Appeals for Franklin County, No.
91AP-1331.
      Appellee-claimant, Charles L. Waddle, sustained three
industrial injuries, the last two of which were in the course
of and arising from his employment with appellant, Baker
Concrete Construction, Inc. ("Baker")  His third injury, in
1984, was the most debilitating, involving his neck, shoulder,
right arm and back.  This last injury prevented a return to his
former job, and generated six years of temporary total
disability compensation.
      In 1987, claimant had a heart attack and underwent
quadruple bypass surgery.  Claimant continued to experience
angina and intermittent losses of vision.  Tests also revealed
an eighty-five percent blockage of his carotid artery.  All of
these conditions were unrelated to his industrial injuries.
      In 1991, claimant sought permanent total disability
compensation.  Dr. John Putman, claimant's physician, opined
that claimant's allowed back conditions alone prevented
sustained remunerative employment.  There was also medical
evidence that claimant's cardiac status precluded sustained
remunerative employment.  The commission ultimately denied
permanent total disability compensation, stating:
      "This order is based particularly upon the reports of
Doctors Hutchison, Pasach and Izsack, a consideration of the
claimant's age, education, work history and other disability
factors including physical, psychological and sociological,
that are contained within the Statement of Facts prepared for
the hearing on the instant Application, the evidence in the

file and the evidence adduced at the hearing.

"The Industrial Commission finds that the claimant is 53 years old, has an eighth grade education, and has worked as a cement finisher and working foreman. The claimant has disabilities which are not related to his three industrial injuries, namely and [sic] emotional condition and severe heart condition which prevents gainful employment, as evidence[d] by the report of Dr. Schneider. However, when Dr. Hutchison examined the claimant and review[ed] the medical record, he concluded the claimant was capable of sustained remunerative employment. Considering the non-medical disability factors noted above and the moderate level of impairment found by Dr. Hutchison, the Industrial Commission finds that the claimant is not precluded from performing sustained remunerative employment."

Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in denying him permanent total disability compensation. The court of appeals agreed, finding that the commission erred in failing to consider claimant's nonallowed heart and emotional conditions as disability factors under State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167, 31 OBR 369, 509 N.E.2d 946. The court issued a writ that vacated the commission's order, and returned the cause for further consideration.

This cause is now before this court upon an appeal as of right.

Daniel D. Connor Co., L.P.A., and Daniel D. Connor, for appellee.

Lee I. Fisher, Attorney General, Cordelia A. Glenn, Yolanda L. Barnes and Gerald H. Waterman, Assistant Attorneys General, for appellant Industrial Commission.

Squire, Sanders & Dempsey, Michael J. Hickey and Michael A. Vanderhorst; Millisor & Nobil Co., L.P.A., and Preston J. Garvin, for appellant Baker Concrete Construction, Inc.

Vorys, Sater, Seymour & Pease and Robert A. Minor, urging reversal for amici curiae, Ohio Manufacturers' Association, Ohio Self-Insurers' Attorney Association and Ohio Chamber of Commerce.

Stewart A. Jaffy & Associates Co., L.P.A., Stewart A. Jaffy and Marc J. Jaffy, urging affirmance for amici curiae, Ohio Association of Trial Lawyers and Ohio AFL-CIO.

Per Curiam. The parties debate the role nonallowed conditions should play in a permanent total disability determination. Amici Ohio AFL-CIO et al. ("AFL-CIO") contend that nonallowed conditions are Stephenson factors that must be considered in this determination. The other parties disagree -- including claimant, whose interest amici AFL-CIO purport to further. Baker and amici Ohio Manufacturer's Association et al. ("OMA") do not focus on nonallowed conditions generally, but only on those that prevent sustained remunerative employment. Where such conditions exist, Baker and amici argue that a finding of permanent total disability is automatically precluded, regardless of the severity of the allowed conditions. Claimant takes a middle ground, arguing that

nonallowed conditions are immaterial, regardless of their severity, as long as the allowed conditions, in and of themselves, prevent sustained remunerative employment. Accordingly, he asserts that nonallowed conditions cannot be used to advance his cause or defeat it. We agree.

Workers' compensation is intended to compensate employees and dependents "for death, injuries or occupational disease, occasioned in the course of such workmen's employment * * *." Section 35, Article II, Ohio Constitution. Accordingly, a claimant must show:

"* * * [N]ot only that his injury arose out of and in the course of employment but that a direct and proximate causal relationship existed between his injury and his harm or disability." Fox v. Indus. Comm. (1955), 162 Ohio St. 569, 55 O.O. 472, 125 N.E.2d 1, paragraph one of the syllabus.

From these mandates, it follows that a claimant cannot be compensated for disability caused by conditions unrelated to the industrial injury.

We recently affirmed this principle in State ex rel. LTV Steel Co. v. Indus. Comm. (1992), 65 Ohio St.3d 22, 599 N.E.2d 265, and State ex rel. Fields v. Indus. Comm. (1993), 66 Ohio St.3d 437, 613 N.E.2d 230. In LTV, claimant bruised his elbow and back at work. Fourteen years later, he sought permanent total disability compensation. The medical reports of claimant's doctor and a commission specialist attributed claimant's inability to work, however, to nonallowed conditions. The commission awarded permanent total disability compensation, nonetheless, based on the reports of these doctors and a purported consideration of nonallowed medical disability factors.

We found an abuse of discretion and vacated the order. Stressing the physicians' extensive reliance on nonallowed conditions, we stated:

"Entitlement to permanent total disability compensation requires a showing that the medical impairment due to the allowed conditions, either alone or together with nonmedical disability factors, prevents claimant from engaging in sustained remunerative employment." Id., at 24, 599 N.E.2d at 267.

We elaborated this finding in Fields. Rejecting the very argument put forth by amici AFL-CIO in the instant case, Fields stated:

"* * * Stephenson was never intended to permit the commission to base an award of permanent total disability on non-allowed medical conditions, in whole or in part." Id., at 440, 613 N.E.2d at 232.

This is not to say that the mere presence of nonallowed conditions automatically bars permanent total disability compensation. Cases such as State ex rel. Jones & Laughlin Steel Co. v. Indus. Comm. (1985), 29 Ohio App. 3d 145, 29 OBR 162, 504 N.E.2d 451; State ex rel. Ashcraft v. Indus. Comm. (1987), 34 Ohio St.3d 42, 517 N.E.2d 533; State ex rel. Rockwell Internatl. v. Indus. Comm. (1988), 40 Ohio St.3d 44, 531 N.E.2d 678; and State ex rel. Chrysler Corp. v. Indus. Comm. (1991), 62 Ohio St.3d 193, 580 N.E.2d 1082, do not inherently prohibit permanent total disability compensation to claimants concurrently disabled due to nonallowed conditions,

since the holdings in these cases are not as broad as Baker suggests.

These decisions have consistently denied total disability compensation to those who voluntarily left their former position of employment or the work force in general.  Baker's reliance on these cases, however, is flawed for two reasons.  First, Baker overlooks the possibility that, as here, the nonindustrial disability may arise after the industrial injury has already forced the claimant from his or her job.  As the Alaska Supreme Court stated in Estate of Ensley v. Anglo Alaska Constr. Co. (1989), 773 P.2d 955, 958:

"An employee's voluntary departure from the work force is not analogous to the situation where terminal illness prevents an already totally disabled individual from returning to work."  (Emphasis added.)

Second, Baker erroneously assumes that any claimant who is not working because of a nonindustrial ailment has either completely "retired" or at least "abandoned" his or her former position of employment.  However, "abandonment" - - which encompasses "retirement" - - relates to an issue that is:

"* * * '[P]rimarily * * * [one] of intent * * * [that] may be inferred from words spoken, acts done, and other objective facts. * * *  All relevant circumstances existing at the time of the alleged abandonment should be considered.' * * * '"[A]n abandonment is proved by evidence of intention to abandon as well as acts by which the intention is put into effect."'  The presence of such intent, being a factual question, is a determination for the commission."  (Emphasis added.)  State ex rel. Diversitech Gen. Plastic Film Div. v. Indus. Comm. (1989), 45 Ohio St.3d 381, 383, 544 N.E.2d 677, 677-678.

Diversitech suggests that, as a general rule, a finding of "abandonment" or "retirement" requires an affirmative act or declaration by the claimant.  The record contains no evidence to support a finding of abandonment here, negating Baker's reliance on Jones & Laughlin and its progeny.

Our decision is consistent with those of other states that have addressed this issue.  In Ensley, supra, the Alaska Supreme Court upheld the right of a claimant concurrently disabled for an unrelated condition to compensation.  Ensley injured his back on the job on December 7, 1984.  On December 22, 1984, his injury forced him from work.  Three weeks later, he was diagnosed with cancer unrelated to employment.  On February 4, 1985, claimant's attending physician reported that claimant was totally disabled by his back.  He also stated that claimant's cancer prevented work as well.  Finally, on February 10, 1985, claimant left his job to undergo cancer treatment.

Before he died in July, claimant sought temporary total disability compensation.  The workers' compensation board awarded claimant compensation from December 22, 1984 through February 9, 1985, but denied payment thereafter, finding that claimant's inability to work was cancer-related and therefore precluded temporary total compensation.  The court disagreed, stating:

"* * * [W]e are confronted with a unique situation.  The medical records indicate that Ensley suffered from two independent conditions - - one work-related and one not - - either of which would have prevented him from working."  Id. at

958.

Continuing, the court stated:

"The fact that Ensley also suffered a concurrent loss of earning capacity due to the cancer does not destroy the causal link between the work injury and his temporary total loss of earning capacity." Id.

The court reasoned:

"The [Workers' Compensation] Act was designed to be a liberal remedial scheme to partially compensate workers for lost wages due to employment related disabilities. * * * We conclude that the remedial policy of the Act is furthered by providing compensation for temporary disability even when a concurrent unrelated medical condition has also rendered the worker unable to earn his or her normal wages. To construe the Act so as to deny coverage would create a windfall to employers simply because of the employee's misfortune in developing an independent medical problem." Id. at 959.

The Washington Court of Appeals reached the same result in Shea v. Dept. of Labor & Industries (1974), 12 Wash. App. 410, 529 P.2d 1131. There, the claimant injured his back on the job. At the time of the accident, claimant also had a nonindustrial vascular condition, which, through medication, did not affect his ability to work. As the years passed, both his back and vascular conditions worsened.

Claimant eventually exited the work force. It is not known from the opinion which condition (or possibly both) prompted him to leave. Nevertheless, by the time claimant filed for permanent total disability compensation, the medical evidence established that either condition, independent of the other, kept claimant from working.

The court found that because the back condition alone was permanently and totally disabling, the existence of a separate nonindustrial disability did not bar permanent total disability compensation. Underlying the decision was the:

"* * * [O]bvious - - and oft repeated - - concept that the workmen's compensation act was designed to provide benefits not only to workmen with no prior physical or mental impediments, but also to workmen who may be afflicted with preexisting physical or mental infirmities or disabilities * * *." Id. at 414, 529 P.2d at 1133.

Accordingly, the court ruled:

"* * * [I]f the injury complained of is a proximate cause of the disability for which compensation is sought, the previous physical condition of the workman is immaterial and recovery may be had for the full disability independent of any preexisting weaknesses." (Emphasis sic.) Id.

Ensley and Shea are well reasoned. A claimant whose allowed conditions, either alone or together with nonmedical factors, prevent sustained remunerative employment should not be penalized in a permanent total disability determination simply because he or she is unfortunate enough to have other health problems. We therefore, find that the mere presence of nonallowed disabling conditions does not automatically foreclose a finding of permanent total disability.

Finding, therefore, that claimant has not automatically forfeited his eligibility for permanent total disability compensation, we turn to claimant's assertion that the

commission's order violates State ex rel. Noll v. Indus. Comm. (1990), 57 Ohio St.3d 203, 567 N.E.2d 245.  Noll requires the commission to "prepare fact specific orders which will be meaningful upon review," by setting forth the reasoning for its decision.  Id. at 206, 567 N.E.2d at 248.

As this case demonstrates, the permanent total disability decisions that are appealed to this court are, factually, close calls.  Almost all involve a claimant who retains some medical capacity for work, making the role of nonmedical factors even more critical.  It is not enough, in this case, for the commission to merely recite that "claimant is 53 years old, has an eighth grade education, and has worked as a cement finisher and working foreman."  These factors are susceptible to both positive or negative interpretations depending on the reviewer, and, therefore, mere recitation gives no insight into the commission's reasoning.  If, for example, the commission views these factors as assets to retraining, it should say so. Specific recitation, without more, is only slightly better than the old boilerplate language assailed in Noll.  We, therefore, return the order to the commission for further consideration and an amended order.

This case does not conflict with our earlier decision in LTV, supra.  LTV held that the presence of a totally disabling nonindustrial condition negated the need for further Noll consideration.  Unlike this case, however, the claimant in LTV suffered no underlying impairment whatsoever from the allowed condition.  There was thus no allowed condition/impairment with which Stephenson factors could conceivably combine to produce permanent total disability.  The present claimant clearly has a work-related physical impairment with which Stephenson factors could combine.

For the above reasons, the judgment of the court of appeals is affirmed and the cause is returned to the commission for additional consideration and an amended order consistent with Noll.

Judgment affirmed.

Moyer, C.J., A.W. Sweeney, Douglas, Wright,  Resnick, F.E. Sweeney and Pfeifer, JJ., concur.