NO. 94-523

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

CARL LARSON,

      Petitioner and Appellant,

    -vs-

CIGNA INSURANCE COMPANY,

      Respondent/Insurer and
          Respondent,

YELLOWSTONE FORD TRUCK SALES,

      Employer.

FILED

MAY 4 1995

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    Workers' Compensation Court, State of Montana
              The Honorable Mike McCarter, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          James G. Edmiston, III, Attorney at Law,
          Billings, Montana

      For Respondent:

          Sara R. Sexe; Marra, Wenz, Johnson & Hopkins,
          Great Falls, Montana


                    Submitted on Briefs:  March 16, 1995

                          Decided:  May 4, 1995

Filed:

_____
      Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

This is an appeal from the judgment of the Workers' Compensation Court holding that appellant Carl Larson could not receive permanent total disability benefits for his work-related hernia condition due to the fact that he first became totally disabled by a pre-existing, non work-related and independent heart condition. We reverse the decision of the Workers' Compensation Court and remand for further proceedings.

Factual Background

Until December 15, 1981, the last day of his employment, Larson worked in the truck parts business for approximately thirty years. From 1978 through December 15, 1981, Larson was parts manager for Yellowstone Ford Truck Sales in Billings, Montana.

On August 20, 1980, Larson suffered a heart attack and was off work for several months. On October 13, 1980, he underwent a heart catheterization. On October 16, 1980, he underwent open heart surgery which involved a resection of a left ventricular aneurism. In April, 1981, he had a second heart catheterization. Larson was unsure as to precisely when he returned to work, but he agreed that he probably went back to work full time sometime during the spring of 1981. When he returned to work, Larson assigned the heavier tasks to the other employees. Then, on July 15, 1981, Larson suffered a left inguinal hernia when he lifted a 150-pound truck spring. This injury occurred in the course and scope of Larson's employment with Yellowstone Ford Truck Sales. At the time of the

2

hernia injury, Yellowstone Ford was insured by Cigna.

Cigna accepted liability for Larson's hernia injury and paid medical benefits and temporary total disability benefits. On September 14, 1981, Larson had hernia repair surgery. He returned to work in October, 1981, at which time his doctor considered his hernia one hundred percent healed.

Following his heart attack in August of 1980 and his hernia in July of 1981, Larson had difficulty performing his normal job duties of heavy lifting and running up and down stairs. On December 15, 1981, Larson was laid off work due to his inability to perform his job. As of December 15, 1981, Larson considered himself unable to work and, therefore, retired.

Larson was awarded Social Security Disability benefits as a result of his heart condition. Those benefits became effective in February, 1981 and continued through March 16, 1988, when Larson turned 65 and became eligible for Social Security retirement benefits.

Despite his physician's determination that the hernia was one hundred percent healed, in May, 1982, Larson's left inguinal hernia symptoms flared up. On June 17, 1982, a recurrence of the left inguinal hernia was medically diagnosed. However, Larson received no further treatment for his hernia symptoms until December, 1984. The left inguinal hernia was surgically repaired in 1985, 1986, and finally in 1987. There has been no recurrence of his left inguinal hernia since 1987. Larson, however, continues to experience localized pain in his left groin. Medical bills for Larson's

hernia repairs were submitted to Cigna and were paid. In September, 1992, Larson submitted a claim for additional compensation benefits respecting his hernia.

Dr. Shaw gave Larson an impairment rating of twenty-five percent of the whole person based on the inguinal hernia. The Workers' Compensation Court found that, based on Dr. Shaw's testimony, Cigna had paid Larson eight months of temporary total disability benefits. At the time of trial, Cigna's counsel indicated that Cigna had agreed to pay an additional six months of temporary total disability benefits for purposes of retraining and 500 weeks of permanent partial disability benefits, including amounts due for the impairment rating. Larson's post-trial briefs indicate that payment was made shortly after trial.

The Workers' Compensation Court denied Larson's application for permanent total disability benefits under § 39-71-116(13), MCA (1979)

The Workers' Compensation court held that Larson was ineligible to receive permanent total disability benefits for his work-related hernia, due to the fact that he first became totally disabled by a preexisting, non work-related and independent heart condition. The Workers' Compensation Court held, in its conclusion of law No. 4, as follows:

> 4. Claimant has failed to carry his burden of proof. A preponderance of credible evidence establishes that as of December 15, 1981, claimant was permanently totally disabled by a preexisting heart condition that was not work-related. The heart condition preceded claimant's industrial injury and the permanent disability was the result of a natural progression of that condition. It does not appear that claimant ever returned to full

4

duties after his August 1980 heart attack. During the short periods he did return to work he had difficulty performing his job. Ultimately, he could not perform his job at all, even though he had successfully recovered from his hernia operation. While claimant's left inguinal hernia subsequently occurred, he was already permanently disabled.

The Court is also not persuaded that the hernia would have recurred absent the totally disabling heart condition. The heart condition, and the inactivity it caused, increased claimant's risk of recurrence.

As a result of his heart attack claimant sustained a "total loss of wages" and had no "reasonable prospect of employment of any kind in the normal market." Thus, claimant had nothing else to lose on account of his industrial accident. He does not meet the criteria for permanent total disability and is therefore not entitled to permanent total disability benefits.

## Discussion

This case presents an issue of first impression in the State of Montana. This Court has not had occasion to address a situation involving independent, disabling conditions, one work-related and the other not. Although this Court has not been presented with this particular fact situation before, courts from other jurisdictions have dealt with the issue presented.

In 1974, the Court of Appeals of Washington decided Shea v. Department of Labor and Industry (Wash. Ct. App. 1974), 529 P.2d 1131. The Shea case involved facts very similar to those presently before this Court. As early as 1961, Mr. Shea first began to suffer the effects of a non work-related degenerative vascular disease and resultant hypertension, which were treated with medication permitting him to continue his work. Mr. Shea then injured his right shoulder in a work-related accident in 1964.

5

However, by November of 1965, Mr. Shea could not have worked at any occupation on a reasonably continuous basis since he was totally disabled due to the progressively degenerative, non work-related vascular condition. Mr. Shea did not work subsequent to November, 1965. His shoulder condition continued to worsen and, in 1971, after the shoulder claim was reopened and brought to hearing, Mr. Shea argued that he was permanently totally disabled by the 1964 shoulder injury.

The Washington court characterized the situation as follows:

> Thus, viewing the evidence in a light most favorable to the workman (which we must), we visualize him as suffering from two totally independent conditions, each of which is progressively causing increasingly serious disabilities. On the one hand, disregarding his industrial injury and the effects thereof, he was effectively removed from the labor market as early as November, 1965, by reason of a condition which preexisted and was not affected by the industrial injury, but which, nevertheless became seriously disabling after the 1964 injury. On the other hand, disregarding the preexisting condition and the subsequent effects thereof, he was also effectively removed from the labor market on or about August, 1971, by reason of the disability attributable to the 1964 injury.

Shea, 529 P.2d at 1133. In concluding that the subsequent work-related disability was compensable, the Washington court relied upon a number of well-established principles of workers' compensation law:

> We start with the obvious--and oft-repeated--concepts that the workmen's compensation act was designed to provide benefits not only to workmen with no prior physical or mental impediments, but also to workmen who may be afflicted with preexisting physical or mental infirmities or disabilities [citation omitted] and that the remedial and beneficial purposes of the act should be liberally construed in favor of workmen and beneficiaries [citations omitted]. It is **a** fundamental principle of workmen's compensation acts that if the injury complained

6

> of is a proximate cause of the <u>disability</u> for which
> compensation is sought, the previous physical condition
> of the workman is immaterial and recovery may be had for
> the full disability independent of any preexisting
> weakness . . . .

<u>Shea</u>, 529 P.2d at 1133.

The principles enunciated and relied upon by the Washington court are equally applicable to the case presently before us. The workers' compensation statutes in effect on the date of the original injury must be applied in determining benefits. Buckman v. Montana Deaconess Hospital (1986), 224 Mont. 318, 730 P.2d 380. Larson originally suffered his hernia injury in 1981. At that point in time, workers' compensation claims were governed by the following principles: the Workers' Compensation Act was to be liberally construed in favor of the injured worker pursuant to § 39-71-104, MCA; Stokes v. Delaney & Sons, Inc. (1964), 143 Mont. 516, 519-20, 391 P.2d 698, 700. (The liberal construction provision was deleted by the 1987 amendments to the Montana Workers' Compensation Act.) Further, it was (and is) well established in Montana that an employer takes his employee subject to the employee's physical condition at the time of the employment, Bond v. St. Regis Paper Co. (1977), 174 Mont. 417, 420, 571 P.2d 372, 374; compensation laws are not made solely for the protection of employees in normal physical condition, but for those who are not super physical specimens. Peitz v. Industrial Accident Board (1953), 127 Mont. 316, 322-23, 264 P.2d 709, 712.

The Washington court acknowledged that, since Mr. Shea was described as permanently totally disabled in 1965 due to a non-

7

industrial injury, it appeared inconsistent to then declare that he was again rendered permanently totally disabled in 1971 from an industrial injury. Concluding that this was a superficial rather than a "genuine inconsistency," the court stated:

> When the character and quantum of that evidence indicate the workman's inability to perform reasonably obtainable work suitable to his qualifications and training, he is said to be totally disabled. When a significantly contributing cause of that inability is an industrial injury or disease, the workman is entitled to receive total disability benefits under the workmen's compensation act, regardless of the fact that other circumstances and conditions may also be considered contributing causes of that inability.

Shea, 529 P.2d at 1134.

The Supreme Court of Alaska relied upon the Shea rationale in deciding Estate of Ensley v. Anglo Alaska Const. (Alaska 1989), 773 P.2d 955. In the Alaska case, Ensley suffered a back strain injury in December of 1984 but then, while off work with the back strain, was diagnosed with terminal cancer in February of 1985. The Alaska Workers' Compensation Board initially found that "[t]he cancer was a supervening cause analogous to death which terminated the employee's economic life," and that therefore no temporary total disability benefits were payable for the back injury after the cancer was diagnosed. Ensley's estate appealed the Board's finding to the Alaska Supreme Court.

The Alaska court concluded that Ensley's situation was unique because the worker suffered from two independent conditions, one work-related and one non work-related, either of which would have prevented him from working. Relying extensively on the Washington decision in Shea, the Alaska court found, "[t]o construe the Act so

8

as to deny coverage would create a windfall to employers simply because of the employee's misfortune in developing an independent medical problem." Enslev, 773 P.2d at 959. The Alaska court held that Ensley's estate was entitled to recover the temporary total disability benefits which should have been paid during the period in which Ensley's back injury would have prevented him from returning to work regardless of the fact that he was undergoing cancer treatment.

We agree with the rationale set forth by the Washington court in Shea and the Alaska court in Enslev. In the present case, if the evidence shows that Larson's inguinal hernia produced a permanent total disability, he is entitled to receive total disability benefits under the Workers' Compensation Act regardless of the fact that his preexisting, non work-related heart condition may also be considered a cause of that permanent total disability. Having concluded that Larson was permanently and totally disabled as a result of his preexisting heart condition, the Workers' Compensation Court did not make a finding as to whether the subsequent work-related hernia injury was also permanently totally disabling. Accordingly, we reverse the decision of the Workers' Compensation Court and remand for further proceedings consistent with this opinion; in particular, specific findings and conclusions as to whether Larson's subsequent, inguinal hernia constitutes an independent, totally disabling work-related condition.

Reversed and remanded.

_____
Justice

9

we concur.

_____
Chief Justice

_Tom Trieweiler_

_William E Hunter_


_____


_____
Justices

Justice Karla M. Gray, specially concurring.

I specially concur in the Court's opinion.

I do not disagree with the adoption of the legal principles from Shea and Ensley. I am less convinced than the Court, however, that the Workers' Compensation Court actually erred as a matter of law, even applying those principles to the case now before us. The most that can be said, perhaps, is that we cannot be certain that the court applied the principles we have now adopted; it is for that reason alone that I join the Court in reversing and remanding for the entry of findings and conclusions.

It is important, in my view, to further clarify what this Court is and is not actually directing the Workers' Compensation Court to do on remand. My understanding is that the Court is not attempting, in any way, to "direct a verdict" on the facts of this case. The Workers' Compensation Court is to reconsider the evidence before it and enter findings and conclusions relating to whether the claimant's May 1982 (and later) hernia problems meet the definition of "permanent total disability" under § 39-71-116(13), MCA (1979); in doing so, it is to consider and apply the Shea and Ensley principles. That, as I understand it, is the Workers' Compensation Court's role on remand as stated by this Court.

In that regard, the court must determine initially whether the claimant has established by a preponderance of the evidence that his May 1982 (and later) hernia problems resulted from the work-related injury on July 15, 1981, which first caused the hernia.

11

See § 39-71-116(13), MCA (1979). If not, the inquiry will end. If so, then the court also must determine under the statute whether the claimant's work-related injury resulted in his loss of actual earnings or earning capability; this portion of the analysis necessarily will entail application of the Shea and Ensley legal principles.

On this basis, I join the Court in reversing and remanding to the Workers' Compensation Court.

_____
Justice

Justice Fred J. Weber dissents as follows:

Under differing facts, I could agree that it is appropriate to adopt the Shea rationale from the state of Washington. My particular problem here is that the findings of fact and conclusions of law of the Workers' Compensation Court require that we affirm rather than remand for reconsideration.

I believe the following findings of fact and conclusions of law are necessary for consideration of the issues before us:

FF #17: At trial claimant testified he did not specify his hernia as contributing to his disability because of the paperwork that would have entailed. The court then stated:

> A preponderance of credible evidence persuades me that when claimant was laid off and he pursued social security disability benefits, he believed he was disabled solely on account of his heart condition. His hernia was not a factor in his decision to pursue benefits nor in his belief that he was unable to work. (Emphasis supplied.)
>
> 18. As of December 15, 1981, claimant considered himself unable to work and therefore retired he presented no evidence indicating that he ever made a subsequent effort to find employment of any sort and a review of claimant's medical records concerning his heart condition provide convincing evidence that after December 15, 1981, claimant was in fact permanently totally disabled and unable to perform any sort of employment because of his heart condition. According to claimant, he was at one time considered a candidate for heart transplant. (Emphasis supplied.)

Paragraph 19 mentions the award of social security disability benefits and No. 20 how claimant had surgery for another aneurysm to replace a mitral valve.

> 21. In May 1982, some of the claimant's left inguinal hernia symptoms reoccurred . . On June 17, 1982, a reoccurrence of the left inguinal hernia was diagnosed. However, claimant received no further treatment for his

13

hernia symptoms until <u>December 1984.</u> (Emphasis supplied.)

22. The left inguinal hernia was surgically re-repaired in 1985, 1986 and, finally in 1987.

.   .

25. The claimant did not submit a claim for additional compensation benefits respecting his hernia until <u>September 1992, almost 11 years after he returned to work</u>. . . . In all his correspondence with Cigna, claimant never asked Cigna about compensation benefits . . . claimant also never told Cigna that he was off work because of his hernia condition. (Emphasis supplied.)

26. However medical bills for claimant's subsequent hernia repairs were submitted to Cigna and paid.

27. On account of his heart condition, as of December 15, 1981, the claimant was no longer available for work in the open labor market. Thus, claimant's total wage loss and loss of earning capability was due to a prior, totally disabling condition and <u>was not attributable to his hernia.</u> (Emphasis supplied.)

28. <u>Claimant has also failed to persuade the court that, absent his heart condition and termination of employment, his inguinal hernia would have recurred.</u> Dr. Elmer Kobold, a surgeon who treated claimant for his hernias, testified that decreased physical activity and a weakening of muscles increases an individual's susceptibility to developing hernias. When specifically asked about the increased susceptibility of "an individual who has recently stopped working and had been in a physically declining state because of that," Dr. Kobold responded, "Yes. I am sure with his cardiac surgery he was severely physically limited for months, and that would give him more of a chance for muscle weakness and reoccurrence." (Emphasis supplied.)

30. . . . Cigna agreed to pay claimant 8 months of temporary total disability benefits. .

31. <u>Dr. Shaw gave claimant an impairment rating of 25% of the whole person based on the inguinal hernia.</u> (Emphasis supplied.)

CL #5. . . Even if claimant is deemed <u>not</u> to have reached maximum healing following his initial hernia, he most certainly reached maximum healing within 3 months after his final surgery in 1987. While claimant

14

continues to suffer pain in the left inguinal area, he has suffered no reoccurrence of a hernia. His condition has been static in the last 7 years. <u>Dr. Shaw's testimony that maximum healing should have been achieved within 3 months <u>following</u> that surgery was unrebutted</u>. . . (Emphasis supplied.)

I conclude there is clearly substantial evidence to support the conclusion of the Workers' Compensation Court that claimant here failed to prove total disability as a result of his hernia. Under that circumstance, there is no basis for a remand.

I therefore strongly disagree with the statement at the conclusion of the opinion that if the evidence shows that Larson's inguinal hernia produced a permanent total disability, he is entitled to receive total disability benefits. He had that opportunity and failed to present such evidence. At most, he presented evidence unrebutted that he had an impairment rating of twenty-five percent of the whole person based on the inguinal hernia as determined by Dr. Shaw.

The important point here is that Larson did not meet his burden to present evidence that his hernia produced permanent total disability. It is not up to this Court to provide claimant a second chance to do what he previously failed to do. The Workers' Compensation Court correctly determined that claimant had not met his burden of proof.

I would affirm.

_____
Justice

Chief Justice J.A. Turnage concurs in the foregoing dissent.

_____
Chief Justice

15

May 4, 1995

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


James G. Edmiston, III
Attorney at Law
P.O. Box 7187
Billings, MT 59103-7187

Sara R. Sexe, Esq.
Marra, Wenz, Johnson & Hopkins, P.C.
P.O. Box 1525
Great Falls, MT 59403-1525

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy