JUSTICE LEAPHART
delivered the Opinion of the Court.
This is an appeal from the judgment of the Workers’ Compensation Court holding that appellant Carl Larson could not receive permanent total disability benefits for his work-related hernia condition due to the fact that he first became totally disabled by a pre-existing, non work-related and independent heart condition. We reverse the decision of the Workers’ Compensation Court and remand for further proceedings.

Factual Background

Until December 15, 1981, the last day of his employment, Larson worked in the truck parts business for approximately thirty years. From 1978 through December 15, 1981, Larson was parts manager for Yellowstone Ford Truck Sales in Billings, Montana.
On August 20, 1980, Larson suffered a heart attack and was off work for several months. On October 13,1980, he underwent a heart catheterization. On October 16, 1980, he underwent open heart surgery which involved a resection of a left ventricular aneurism. In April, 1981, he had a second heart catheterization. Larson was unsure as to precisely when he returned to work, but he agreed that he probably went back to work full time sometime during the spring of 1981. When he returned to work, Larson assigned the heavier tasks to the other employees. Then, on July 15,1981, Larson suffered a left inguinal hernia when he lifted a 150-pound truck spring. This injury *100 occurred in the course and scope of Larson’s employment with Yellowstone Ford Truck Sales. At the time of the hernia injury, Yellowstone Ford was insured by Cigna.
Cigna accepted liability for Larson’s hernia injury and paid medical benefits and temporary total disability benefits. On September 14, 1981, Larson had hernia repair surgery. He returned to work in October, 1981, at which time his doctor considered his hernia one hundred percent healed.
Following his heart attack in August of 1980 and his hernia in July of 1981, Larson had difficulty performing his normal job duties of heavy lifting and running up and down stairs. On December 15,1981, Larson was laid off work due to his inability to perform his job. As of December 15, 1981, Larson considered himself unable to work and, therefore, retired.
Larson was awarded Social Security Disability benefits as a result of his heart condition. Those benefits became effective in February, 1981 and continued through March 16,1988, when Larson turned 65 and became eligible for Social Security retirement benefits.
Despite his physician’s determination that the hernia was one hundred percent healed, in May, 1982, Larson’s left inguinal hernia symptoms flared up. On June 17, 1982, a recurrence of the left inguinal hernia was medically diagnosed. However, Larson received no further treatment for his hernia symptoms until December, 1984. The left inguinal hernia was surgically repaired in 1985, 1986, and finally in 1987. There has been no recurrence of his left inguinal hernia since 1987. Larson, however, continues to experience localized pain in his left groin. Medical bills for Larson’s hernia repairs were submitted to Cigna and were paid. In September, 1992, Larson submitted a claim for additional compensation benefits respecting his hernia.
Dr. Shaw gave Larson an impairment rating of twenty-five percent of the whole person based on the inguinal hernia. The Workers’ Compensation Court found that, based on Dr. Shaw’s testimony, Cigna had paid Larson eight months of temporary total disability benefits. At the time of trial, Cigna’s counsel indicated that Cigna had agreed to pay an additional six months of temporary total disability benefits for purposes of retraining and 500 weeks of permanent partial disability benefits, including amounts due for the impairment rating. Larson’s post-trial briefs indicate that payment was made shortly after trial.
*101 The Workers’ Compensation Court denied Larson’s application for permanent total disability benefits under § 39-71-116(13), MCA (1979).
The Workers’ Compensation Court held that Larson was ineligible to receive permanent total disability benefits for his work-related hernia, due to the fact that he first became totally disabled by a preexisting, non work-related and independent heart condition. The Workers’ Compensation Court held, in its conclusion of law No. 4, as follows:
4. Claimant has failed to carry his burden of proof. A preponderance of credible evidence establishes that as of December 15,1981, claimant was permanently totally disabled by a preexisting heart condition that was not work-related. The heart condition preceded claimant’s industrial injury and the permanent disability was the result of a natural progression of that condition. It does not appear that claimant ever returned to full duties after his August 1980 heart attack. During the short periods he did return to work he had difficulty performing his job. Ultimately, he could not perform his job at all, even though he had successfully recovered from his hernia operation. While claimant’s left inguinal hernia subsequently occurred, he was already permanently disabled.
The Court is also not persuaded that the hernia would have recurred absent the totally disabling heart condition. The heart condition, and the inactivity it caused, increased claimant’s risk of recurrence.
As a result of his heart attack claimant sustained a “total loss of wages” and had no “reasonable prospect of employment of any kind in the normal market.” Thus, claimant had nothing else to lose on account of his industrial accident. He does not meet the criteria for permanent total disability and is therefore not entitled to permanent total disability benefits.

Discussion

This case presents an issue of first impression in the State of Montana. This Court has not had occasion to address a situation involving independent, disabling conditions, one work-related and the other not. Although this Court has not been presented with this particular fact situation before, courts from other jurisdictions have dealt with the issue presented.
In 1974, the Court of Appeals of Washington decided Shea v. Department of Labor and Industry (Wash. Ct. App. 1974), 529 P.2d *102 1131. The Shea case involved facts very similar to those presently before this Court. As early as 1961, Mr. Shea first began to suffer the effects of a non work-related degenerative vascular disease and resultant hypertension, which were treated with medication permitting him to continue his work. Mr. Shea then injured his right shoulder in a work-related accident in 1964. However, by November of 1965, Mr. Shea could not have worked at any occupation on a reasonably continuous basis since he was totally disabled due to the progressively degenerative, non work-related vascular condition. Mr. Shea did not work subsequent to November, 1965. His shoulder condition continued to worsen and, in 1971, after the shoulder claim was reopened and brought to hearing, Mr. Shea argued that he was permanently totally disabled by the 1964 shoulder injury.
The Washington court characterized the situation as follows: Thus, viewing the evidence in a light most favorable to the workman (which we must), we visualize him as suffering from two totally independent conditions, each of which is progressively causing increasingly serious disabilities. On the one hand, disregarding his industrial injury and the effects thereof, he was effectively removed from the labor market as early as November, 1965, by reason of a condition which preexisted and was not affected by the industrial injury, but which, nevertheless became seriously disabling after the 1964 injury. On the other hand, disregarding the preexisting condition and the subsequent effects thereof, he was also effectively removed from the labor market on or about August, 1971, by reason of the disability attributable to the 1964 injury.
Shea, 529 P.2d at 1133. In concluding that the subsequent work-related disability was compensable, the Washington court relied upon a number of well-established principles of workers’ compensation law:
We start with the obvious — and oft-repeated — concepts that the workmen’s compensation act was designed to provide benefits not only to workmen with no prior physical or mental impediments, but also to workmen who may be afflicted with preexisting physical or mental infirmities or disabilities [citation omitted] and that the remedial and beneficial purposes of the act should be liberally construed in favor of workmen and beneficiaries [citations omitted] . It is a fundamental principle of workmen’s compensation acts that if the injury complained of is a proximate cause of the disability for which compensation is sought, the previous physical condi *103 tion of the workman is immaterial and recovery may be had for the full disability independent of any preexisting weakness ....
Shea, 529 P.2d at 1133.
The principles enunciated and relied upon by the Washington court are equally applicable to the case presently before us. The workers’ compensation statutes in effect on the date of the original injury must be applied in determining benefits. Buckman v. Montana Deaconess Hospital (1986), 224 Mont. 318, 730 P.2d 380. Larson originally suffered his hernia injury in 1981. At that point in time, workers’ compensation claims were governed by the following principles: the Workers’ Compensation Act was to be liberally construed in favor of the injured worker pursuant to § 39-71-104, MCA; Stokes v. Delaney & Sons, Inc. (1964), 143 Mont. 516, 519-20, 391 P.2d 698, 700. (The liberal construction provision was deleted by the 1987 amendments to the Montana Workers’ Compensation Act.) Further, it was (and is) well established in Montana that an employer takes his employee subject to the employee’s physical condition at the time of the employment, Bond v. St. Regis Paper Co. (1977), 174 Mont. 417, 420, 571 P.2d 372, 374; compensation laws are not made solely for the protection of employees in normal physical condition, but for those who are not super physical specimens. Peitz v. Industrial Accident Board (1953), 127 Mont. 316, 322-23, 264 P.2d 709, 712.
The Washington court acknowledged that, since Mr. Shea was described as permanently totally disabled in 1965 due to a non-industrial injury, it appeared inconsistent to then declare that he was again rendered permanently totally disabled in 1971 from an industrial injury. Concluding that this was a superficial rather than a “genuine inconsistency,” the court stated:
When the character and quantum of that evidence indicate the workman’s inability to perform reasonably obtainable work suitable to his qualifications and training, he is said to be totally disabled. When a significantly contributing cause of that inability is an industrial injury or disease, the workman is entitled to receive total disability benefits under the workmen’s compensation act, regardless of the fact that other circumstances and conditions may also be considered contributing causes of that inability.
Shea, 529 P.2d at 1134.
The Supreme Court of Alaska relied upon the Shea rationale in deciding Estate of Ensley v. Anglo Alaska Const. (Alaska 1989), 773 P.2d 955. In the Alaska case, Ensley suffered a back strain injury in December of 1984 but then, while off work with the back strain, was *104 diagnosed with terminal cancer in February of 1985. The Alaska Workers’ Compensation Board initially found that “[t]he cancer was a supervening cause analogous to death which terminated the employee’s economic life,” and that therefore no temporary total disability benefits were payable for the back injury after the cancer was diagnosed. Ensley’s estate appealed the Board’s finding to the Alaska Supreme Court.
The Alaska court concluded that Ensley’s situation was unique because the worker suffered from two independent conditions, one work-related and one non work-related, either of which would have prevented him from working. Relying extensively on the Washington decision in Shea, the Alaska court found, “[t]o construe the Act so as to deny coverage would create a windfall to employers simply because of the employee’s misfortune in developing an independent medical problem.” Ensley, 773 P.2d at 959. The Alaska court held that Ensley’s estate was entitled to recover the temporary total disability benefits which should have been paid during the period in which Ensley’s back injury would have prevented him from returning to work regardless of the fact that he was undergoing cancer treatment.
We agree with the rationale set forth by the Washington court in Shea and the Alaska court in Ensley. In the present case, if the evidence shows that Larson’s inguinal hernia produced a permanent total disability, he is entitled to receive total disability benefits under the Workers’ Compensation Act regardless of the fact that his preexisting, non work-related heart condition may also be considered a cause of that permanent total disability. Having concluded that Larson was permanently and totally disabled as a result of his preexisting heart condition, the Workers’ Compensation Court did not make a finding as to whether the subsequent work-related hernia injury was also permanently totally disabling. Accordingly, we reverse the decision of the Workers’ Compensation Court and remand for further proceedings consistent with this opinion; in particular, specific findings and conclusions as to whether Larson’s subsequent, inguinal hernia constitutes an independent, totally disabling work-related condition.
Reversed and remanded.
JUSTICES TRIEWEILER, HUNT and NELSON concur.