[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
{¶ 1} Relator, Hills Department Stores Co., has filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order awarding permanent total disability compensation to respondent, Sandra A. Sutton, and to enter a new order denying said compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that relator had failed to establish that respondent-commission had abused its discretion and that this court should deny the requested writ.
 {¶ 3} No objections have been filed to the decision of the magistrate.
 {¶ 4} Finding no error or other defect on the face of the decision of the magistrate, pursuant to Civ.R. 53, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with the decision of the magistrate, the requested writ is denied.
Writ of mandamus denied.
BOWMAN and KLATT, JJ., concur.
 APPENDIX A IN MANDAMUS {¶ 5} In this original action, relator, Hills Department Stores Co., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding permanent total disability ("PTD") compensation to respondent Sandra A. Sutton, and to enter an order denying said compensation.
Findings of Fact
 {¶ 6} Sandra A. Sutton ("claimant") sustained two industrial injuries while employed with relator, a self-insured employer under Ohio's workers' compensation laws. Her January 21, 1993 injury is allowed for "contusion head/neck pain; upper shoulder pain/strain; post traumatic cervical myofascial syndrome," and is assigned claim number L224694-22. Her April 6, 1994 injury is allowed for "cervical neck strain; neuritis/spasms; major depression, recurrent," and is assigned claim number L261732-22.
 {¶ 7} On November 28, 2000, claimant filed an application for PTD compensa-tion. In support, claimant submitted a report, dated December 10, 2000, from her treating physician, Dr. Hudson Jones, M.D. The report is Dr. Jones' responses to a "Physical Impairment Questionnaire" submitted to him by claimant's attorney. The questionnaire presents the two claim allowances followed by the directive:
 {¶ 8} "Please answer the following questions concerning your patient's impairments which result solely from the allowed conditions in this claim. Do not base this assessment on any other conditions."
 {¶ 9} One of the queries asked Dr. Jones to: "Identify the clinical findings and objective signs." Dr. Jones wrote: "Central Herniation C5-6 [and] Buldging [sic] C7-T1-C6-7-C5-6."
 {¶ 10} Dr. Jones selected the "No" response for the query: "Based solely on the allowed conditions in this claim, is your patient capable of sustained remunerative employment?"
 {¶ 11} In further support of her PTD application, claimant submitted a report, dated August 25, 2000, from her treating psychiatrist, Kettlie Daniels, M.D. The report is Dr. Daniels' written responses to a "Mental Impairment Questionnaire" submitted to him by claimant's attorney. Dr. Daniels indicated that claimant suffers from poor memory, sleep disturbance, personality change, emotional lability, anhedonia or pervasive loss of interests, feelings of guilt/worthlessness, difficulty thinking or concentrating, social withdraw or isolation, decreased energy, intrusive recollections of a traumatic experience, persistent irrational fears, hostility and irritability.
 {¶ 12} The questionnaire asked Dr. Daniels to report "[t]reatment and response." Dr. Daniels wrote: "Group therapy — no reponse as yet — has attended only 3 sessions thus far."
 {¶ 13} Dr. Daniels selected the "Yes" response for the query: "Is your patient's condition permanent?"
 {¶ 14} Dr. Daniels selected the "No" response for the query: "Is your patient capable of sustained remunerative employment in light of the impairments resulting from the allowed conditions in this claim?"
 {¶ 15} On January 31, 2001, claimant was evaluated, at relator's request, by forensic psychiatrist, Doug Smith, M.D., who issued a report dated February 24, 2001. Dr. Smith found that claimant's allowed psychiatric condition would permit sustained remunerative employment "based on a gradual transition back into the workplace." Dr. Smith opined:
 {¶ 16} "* * * It is probable that she would continue to have further improvement in her symptoms if she continues therapy for her anger. A new anti-depressant, such as Celexa, taken for at least 6 weeks, might also further improve any remaining symptoms. Her diagnosis would then become Major Depressive Disorder, Recurrent, In Full remission. She is most likely to reach that stage after returning to work, since she said her work was partly responsible for her enjoyment of life in the past.
 {¶ 17} "According to Dr. Smith's report, he conducted a telephone interview of Dr. Daniels on February 7, 2001. In that regard, Dr. Smith's report states: "Dr. Daniels initially said that Mrs. Sutton had, `probably reached maximum medical improvement,' but then described how much progress she had made over the past year."
 {¶ 18} On February 8, 2001, claimant was examined by commission specialist and neurologist, Ronald R. Wade, M.D. Dr. Wade did not examine for the psychiatric condition. Dr. Wade reported:
 {¶ 19} "* * * This lady's neurological examination is normal with no evidence for deficit in the cervical nerve roots or the peripheral nerves. * * *
 {¶ 20} "* * *
 {¶ 21} "Based on the AMA Guides to the Evaluation of PermanentImpairment, Fourth Edition, it is my opinion that her disability on the claims I was asked to review is 4% based on the table 76, page 118 of theAMA Guides to the Evaluation of Permanent Impairment, Fourth Edition." (Emphasis sic.)
 {¶ 22} On February 9, 2001, claimant was examined by commission specialist and psychologist, Raymond D. Richetta, Ph.D. In his narrative report, Dr. Richetta wrote:
 {¶ 23} "The evaluation finds that the allowed psychological condition, Major Depression, Recurrent, has reached maximum medical improvement. This opinion is based on the following evidence:
 {¶ 24} "She has had many years of psychotherapy and psychotropic intervention[.]
 {¶ 25} "Her depression continues at significant levels, including crying episodes, social avoidance, reduced self esteem, reduced concentration[.]
 {¶ 26} "Given the duration of her condition and the duration of treatment, it is unlikely that her condition will change significantly in the foreseeable future[.]
 {¶ 27} "* * *
 {¶ 28} "The evaluation finds that the allowed psychological condition, Major Depression, Recurrent, is a Class 3, Moderate impairment, corresponding to a 30% impairment of the whole person (AMA #4, Chapter 14, p. 301, text). This opinion is based on the following evidence:
 {¶ 29} "She experiences sadness daily[.]
 {¶ 30} "She isolates herself daily[.]
 {¶ 31} "She sleeps excessively to avoid social contact[.]
 {¶ 32} "She is sufficiently intact to manage self care and activities of daily living[.]
 {¶ 33} "Dr. Richetta also completed an Occupational Activity Assessment Report dated February 20, 2001. Dr. Richetta indicated that the allowed psychiatric condition precludes sustained remunerative employment, stating: "Her inability to consistently avoid seclusion and retreating to sleep precludes a return to any type of employment at this time."
 {¶ 34} Following an August 10, 2001 hearing, a staff hearing officer ("SHO") issued an order awarding PTD compensation. The SHO's order of August 10, 2001, states:
 {¶ 35} "* * * This order is based particularly upon the reports as outlined in the body of this order.
 {¶ 36} "* * *
 {¶ 37} "On November 28, 2000, claimant filed her application for permanent and total disability compensation contending that the injury primarily in claim number L261732-22 rendered her permanently unable to engage in any sustained remunerative employment. For the following reasons, claimant's contention is persuasive.
 {¶ 38} "As support for her application, claimant submitted a narrative report from attending physician, Dr. Hudson Jones, and attending psychiatrist, Dr. Daniels. The report of Dr. Jones dated 12/10/2000, reveals that the claimant can only sit, stand, and walk less than two hours each in an eight hour working day. Claimant would have to alternate sitting and standing every 15-20 minutes. Dr. Jones opined that the claimant would need a job that permits shifting positions as needed from a sitting, standing, or walking position. Dr. Jones concluded with his opinion that, based solely on the allowed conditions in claim number L261732-22, the claimant is permanently unable to engage in any sustained remunerative employment. The report of Dr. Daniels, psychiatrist, dated 08/25/2000, reveals that the claimant has poor attention, poor concentration, would need special supervision, would not be capable of maintaining regular attendance and be punctual, that the claimant should not work in coordination with or in proximity with others, and that the claimant would have difficulty accepting instructions and getting along with co-workers. Dr. Daniels opined that the claimant is permanently and totally disabled based solely upon the allowed psychological conditions.
 {¶ 39} "Dr. Richetta, psychologist, performed an independent psychological evaluation of the claimant on February 9, 2001, and submitted a report of his findings to the file. Dr. Richetta noted that the claimant has had years of psychotherapy and psychotropic treatment. Claimant's depression continues to be at significant levels including periodic crying episodes, social avoidance, reduced self esteem, and reduced concentration. Dr. Richetta also noted that the claimant isolates herself and sleeps excessively in order to avoid social contact. Dr. Richetta concluded that the claimant is permanently unable to engage in sustained remunerative employment.
 {¶ 40} "This Staff Hearing Officer finds the reports of Dr. Jones, Dr. Richetta, and Dr. Daniels to be persuasive that the claimant is permanently and totally disabled from any gainful employment.
 {¶ 41} "Dr. Ronald Wade, neurologist, performed an independent neurological evaluation of the claimant and submitted a detailed report of his findings to the file. Dr. Wade opined that the claimant would be limited to sedentary work based solely upon the allowed physical conditions. The claimant would only occasionally be capable of lifting or carrying weight up to 10 pounds, and would need to sit most of the time.
 {¶ 42} "This Staff Hearing Officer finds that the claimant is permanently and totally disabled from any and all gainful employment. The functional restrictions outlined by Dr. Wade limit the claimant to sedentary work. Functionally, from a physical perspective, at best, claimant would be capable of performing sedentary work. However, as outlined by Dr. Richetta and Dr. Daniels, the allowed psychological condition in claim number L261732-22 precludes the claimant from performing any gainful activity that normally would be associated with sedentary occupations. Claimant has difficulty concentrating and maintaining her attention. Claimant avoids social contact and still suffers from periodic crying spells. These symptoms and impairments would preclude employ-ment in sedentary occupations."
 {¶ 43} On February 13, 2002, relator, Hills Department Stores Co., filed this mandamus action.
Conclusions of Law
 {¶ 44} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 45} Ohio Adm. Code 4121-3-34 sets forth the commission's rules pertaining to adjudication of PTD applications. Ohio Adm. Code 4121-3-34(D) sets forth the commission's guidelines for the adjudication of PTD applications. The guidelines must be followed sequentially by the adjudicator in the evaluation of a PTD application. Ohio Adm. Code4121-3-34(D)(2)(a) states:
 {¶ 46} "If, after hearing, the adjudicator finds that the medical impairment resulting from the allowed condition(s) in the claim(s) prohibits the claimant's return to his former position of employment as well as prohibits the claimant from performing any sustained remunerative employment, the claimant shall be found to be permanently and totally disabled, without reference to the vocational factors * * *."
 {¶ 47} Here, the commission awarded PTD compensation based upon a finding that the medical impairment resulting from the industrial injuries prohibits the claimant from performing any sustained remunerative employment. Thus, the commission did not find it necessary to evaluate the vocational or nonmedical factors.
 {¶ 48} The commission's determination that the medical impairment resulting from the industrial injuries precludes all sustained remunerative employment was based upon the reports of claimant's treating physicians, Drs. Jones and Daniels, and independent examiners, Drs. Richetta and Wade.
 {¶ 49} Clearly, Dr. Richetta's report alone supports a PTD award and provides the some evidence to support a finding that the psychiatric condition precludes all sustained remunerative employment without regard to the nonmedical or vocational factors.
 {¶ 50} In this action, relator challenges the reports of relator's treating physicians, Drs. Jones and Daniels, contending that they do not constitute some evidence upon which the commission can rely to support the PTD award.
 {¶ 51} Relator contends that Dr. Jones relied upon nonallowed conditions to support his PTD opinion. Nonallowed medical conditions cannot be used by the commission to advance a PTD application. State exrel. Waddle v. Indus. Comm. (1993), 67 Ohio St.3d 452; State ex rel.Bradley v. Indus. Comm. (1997), 77 Ohio St.3d 239, 242.
 {¶ 52} Relator contends that Dr. Daniels' report actually indicates that the psychiatric condition has not reached maximum medical improvement ("MMI"). Ohio Adm. Code 4121-3-34(D)(1)(f) provides that PTD cannot be based upon an allowed condition that has not reached MMI.
 {¶ 53} Relator does not challenge Dr. Richetta's report in this action. Relator's failure to present a challenge to Dr. Richetta's report fatally undermines its contention that the commission's PTD determination is not supported by some evidence. This court need not address relator's contention that the reports of the treating physicians cannot constitute some evidence. Even if relator's challenges to the reports of Drs. Jones and Daniels are meritorious, the commission's award remains supported by some evidence, namely Dr. Richetta's report.
 {¶ 54} In State ex rel. Galion Mfg. Div., Dresser Industries,Inc. v. Haygood (1991), 60 Ohio St.3d 38, the Supreme Court of Ohio upheld a commission PTD award noting, contrary to the employer's suggestion, that a claimant who has multiple allowed conditions is not required to show that each condition, standing alone, is work prohibitive. The Galion case is instructive here. The commission awarded PTD based solely upon the finding that the "major depression, recurrent" is totally work prohibitive. The claimant was not required to prove that her physical injuries were totally work prohibitive in order to obtain PTD. Galion, supra.
 {¶ 55} In Galion, the employer directed its sole challenge to Dr. Lyon's report. The court noted that the employer ignored the commission's additional reliance upon Dr. Retter's reports. The court found that Dr. Retter's reports alone supported the PTD award. Again,Galion is instructive. Relator cannot successfully challenge the instant PTD award by limiting its challenge to the reports of claimant's treating physicians.
 {¶ 56} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.