DECISION
Relator, Rosalie Stander, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that denied her request for temporary total disability compensation for the period September 24, 1999 to April 17, 2000, in both a 1996 and a 1998 industrial claim, and to enter an order granting such compensation.
This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided that the requested writ of mandamus should be denied as it pertains to the 1996 claim. The magistrate further decided that the Industrial Commission had abused its discretion in its May 2001 order denying temporary total disability compensation relating to the 1998 claim, because the 2001 order was premised on an order issued in April 2000, and that order was a clear mistake of law because it failed to meet the requirements of State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, and violated State ex rel. Waddle v. Indus. Comm. (1993), 67 Ohio St.3d 452. The magistrate decided that a writ of mandamus should be issued to require the commission to vacate its April 2000 order, to reissue that order, and then to decide relator's request for temporary total disability compensation based on the reissued April 2000 order and the evidence before the commission.
Respondent-employer, The Budd Co., has filed objections to the magistrate's decision as it relates to the 1998 claim and neither the commission nor relator have responded. The employer argues that, inasmuch as the April 2000 order had not been appealed, it was res judicata as to relator's claim for temporary total disability compensation for the same period of time. The employer further argues that the commission is under no duty to exercise continuing jurisdiction absent a request by the parties to review all previously issued orders in a claim. Last, the employer argues that the April 2000 order does comply with Noll and does not violate Waddle.
Because we conclude the April 2000 order complied with Noll and did not violate Waddle, we need not determine whether the commission is under a duty to sua sponte examine all previous orders issued in a claim. The April 2000 order states, in part:
 The claimant switched to Dr. Lyon on or about 9/14/99. Dr. Lyon has not shown that he has limited his disability conditions to the conditions allowed in this claim, or why another MRI might be necessary to further evaluate the fibromyalgia condition. Therefore, further temporary total compensation is not payable past 9/23/99 at this time.
At the time the order was issued, the commission had four reports from Dr. Lyon. The September 1999 and November 1999 reports discussed carpal tunnel syndrome, as well as relator's problems with her right shoulder and rotator cuff, which are not conditions allowed in the 1998 claim. The January 2000 and April 2000 reports of Dr. Lyon both refer to the need for an MRI. Given that the allowed condition in the 1998 claim is for fibromyalgia, which is chronic pain in the muscles and soft tissue, the report fails to indicate how MRI testing relates to this condition alone.
Upon a review of the magistrate's decision and an independent review of the record, this court adopts the magistrate's findings of fact as its own. This court adopts the magistrate's conclusions of law, as those conclusions relate to the 1996 claim of relator. This court further sustains the employer's objections to the magistrate's decision, as those objections relate to relator's 1998 claim and the requested writ of mandamus is denied.
Objections sustained, writ of mandamus denied.
LAZARUS and BROWN, JJ., concur.
 IN MANDAMUS
In this original action, relator, Rosalie Stander, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its orders denying her temporary total disability ("TTD") compensation for the period September 24, 1999 to April 17, 2000, in two industrial claims, and to enter an order granting her TTD compensation for the period September 24, 1999 to April 17, 2000.
Findings of Fact:
1. Relator has two industrial claims. Claim number 96-614611 ("1996 claim") is allowed for "right carpal tunnel syndrome; right shoulder tendonitis." The commission recognizes March 6, 1996 as the diagnosis date for the 1996 claim.
2. Claim number 98-621804 ("1998 claim") is allowed for "fibromyalgia syndrome of the upper back, neck, and both shoulders; adjustment disorder with mixed anxiety and depressed mood." The commission recognizes July 27, 1998 as the injury date for the 1998 claim.[1]
3. Both industrial claims arose out of relator's employment with respondent The Budd Co., a self-insured employer under Ohio's workers' compensation laws. Relator was employed by The Budd Co. ("employer"), in a manual labor job described as "light finisher."
4. On July 23, 1999, relator's treating chiropractor, Betty J. Lok, D.C., completed a C-84 certifying TTD from July 23, 1999 to an estimated return-to-work date of September 23, 1999. On the C-84, Dr. Lok indicated that "fibromyalgia" was the allowed condition being treated that prevents relator's return to work.
5. Effective September 14, 1999, relator changed her physician of record from Dr. Lok to Ralph L. Lyon, Ph.D., D.O.
6. On September 14, 1999, relator was initially examined by Dr. Lyon who reported:
 * * * Apparently, she has seen a physician in Toledo, who on the basis of a EMG Nerve Conduction Study, is apparently of the opiinion [sic] that the patient is no longer disabled. He apparently disallows her diagnosis of fibrom[y]algia, as well as, carpal tunnel syndrome.
 My medical opinion differs somewhat. I do not believe that the shoulder has been completely and adequately evaluated. She would, at least, need an MRI and/or arthroscopy of the right shoulder to determine the nature of her injury to this area. Further, a negative EMG Nerve Conduction Study does not exclude the diagnosis of carpal tunnel syndrome. What it does exclude is normal nerves. A positive EMG suggests that there is permanent damage to the medium [sic] nerve.
 On examination, she had a positive Tinel's Sign. A negative ________ sign suggesting that she does have some problem with carpal tunnel. Evaluation of the right shoulder and the rotator cuff reveals external rotation is normal, but she has considerable weakness with abduction. Hence, my suggestion that she needs further evaluation of this shoulder. Fibromyalgia is clearly and intimately related to injuries when it has reached a chronic form. Fibromyalgia can exist in conjunction with fibromyositis, which I am sure she certainly has, as this is a nature [sic] outcome of long-term complications of an injury.
 I conclude that she h[a]s not reached a maximum level of improvement until she has reached a maximum level of evaluation and treatment. I do believe that further evaluation would be of benefit to her, as well as, further physical therapy. A work-hardening program might be of benefit and I further believe that the stress that she has endured as a result of the apparent non-compliance with physician recommendations as to the work restrictions has resulted in considerable amount of stress and this needs to be address[ed] by either a psychia-trist or psychologist. Unfortunately, we see this situation all too often in the work place and hopefully we will be able to rehabilitate her back to a meaningful position of employment. It is my understanding that she has been diagnosed as having an adjustment disorder by a psychologist, but obviously further treatment is indicated and warranted.
 * * * I might further add that fibromyalgia/fibromyositis are the results of chronic complications of an acute injury, which in this case appears to result from the problems I have stated above.
7. On November 16, 1999, Dr. Lyon completed a C-84 certifying TTD from September 14, 1999 to an estimated return-to-work date of January 20, 2000. The C-84 lists only the 1998 claim number. The C-84 form asks the treating doctor to "[l]ist ICD-9 Codes with narrative diagnosis(es) for allowed conditions being treated which prevent return to work."
In response to the above query, Dr. Lyon wrote: "Shoulder Tendonitis, Carpal Tunnel, Fibromyalgia."
8. On October 21, 1999, relator moved for TTD compensation beginning July 23, 1999 in the 1998 claim. The motion cites to a C-84, a change of physician form, and Dr. Lyon's September 14, 1999 report.
9. Also on October 21, 1999, relator moved for the recognition of an additional condition in the 1998 claim.
10. Following a January 31, 2000 hearing, a district hearing officer ("DHO") issued an order denying TTD compensation beginning July 23, 1999, on grounds that the injury had reached maximum medical improvement ("MMI") prior to September 23, 1999. The DHO additionally allowed the 1998 claim for "adjustment disorder with mixed anxiety and depressed mood," based upon reports from Dr. Murphy.
11. Both relator and the employer administratively appealed the DHO's order of January 31, 2000.
12. On January 25, 2000, Dr. Lyon completed another C-84. On this C-84, Dr. Lyon certified TTD from September 14, 1999 to an estimated return-to-work date of March 20, 2000 in the 1998 claim. Only "fibromyalgia" was listed as an allowed condition being treated that prevents a return to work.
13. On April 3, 2000, Dr. Lyon completed a third C-84. On this C-84, Dr. Lyon certified TTD in the 1998 claim from March 20, 2000 to an estimated return-to-work date of April 24, 2000, based solely upon "fibromyalgia."
14. Following an April 17, 2000 hearing on the parties' administrative appeals, a staff hearing officer ("SHO") issued an order vacating the DHO's order of January 31, 2000.
The SHO found that MMI had not been reached and awarded TTD compensation from July 23, 1999 through September 23, 1999, based upon the C-84 from Dr. Lok. The April 17, 2000 SHO's order further states:
 The claimant switched to Dr. Lyon on or about 9/14/99. Dr. Lyon has not shown that he has limited his disability conditions to the conditions allowed in this claim, or why another MRI might be necessary to further evaluate the fibromyalgia condition. Therefore, further temporary total compensation is not payable past 9/23/99 at this time.
The SHO affirmed the DHO's order granting of the psychological claim allowance in the 1998 claim.
15. Both relator and the employer sought to appeal the SHO's order of April 17, 2000. However, on May 12, 2000, another SHO mailed an order refusing the appeals.
16. On May 30, 2000, Dr. Lyon wrote to relator's counsel as follows:
 I have received your letter dated May 5, 2000 regarding Rosalie Stander. She has been recognized under BWC for fibromyalgia of the upper back, neck and bilateral shoulders, as well as, adjustment disorder with mixed anxiety and depression mood, which is claim number 98-621804. Her other claim 96-614611, is recognized for right carpal tunnel syndrome and right shoulder tendonitis.
 It is my medical opinion that these are intimate and related, that claim number 96-614611 evolves into the problems associated with claim number 98-621804. * * *
In the May 30, 2000 letter, Dr. Lyon also complains of what he perceives as problems caused by the employer in his medical treatment of relator.
17. On June 26, 2000, Dr. Lyon wrote again complaining of the problems he perceives to be caused by the employer.
18. On June 26, 2000, Dr. Lyon completed a fourth C-84 in which he certified TTD from September 14, 1999 to August 4, 2000. On the C-84, Dr. Lyon lists both claim numbers. The C-84 form asks the treating doctor to "[l]ist ICD-9 Codes with narrative diagnosis(es) for allowed conditions being treated which prevent return to work."
In response to the above query, Dr. Lyon wrote: "Fibromyalgia, Depression, Anxiety."
The C-84 form also asks the treating doctor to "[l]ist ICD-9 Codes with narrative diagnosis(es) for other allowed conditions being treated."
In response to the above query, Dr. Lyon wrote: "R Carpal Tunnel," "R Shoulder Tendonitis."
19. On July 27, 2000, relator changed her attending physician to William R. Bauer, M.D. Dr. Bauer's reports are not at issue in this action.
20. In early September 2000, relator filed identical motions in the 1996 and 1998 claims. The motions requested TTD compensation beginning September 24, 1999, citing Dr. Lyon's June 26, 2000 C-84, and his May 30, 2000 and June 26, 2000 narrative reports.
21. On October 10, 2000, a DHO heard the motions for TTD compensation beginning September 24, 1999 in both industrial claims. The DHO issued two separate orders for each industrial claim.
22. The DHO's order of October 10, 2000 in the 1996 claim denies TTD compensation from September 24, 1999 to the date of hearing, stating:
 District Hearing Officer finds that the medical evidence does not sufficiently support that claimant was temporarily and totally disabled due to the allowed conditions in the claim. The C-84's of Dr. Lyon, dated 1/25/00 and 6/26/00 list conditions allowed in claimant's 1998 claim, not the instant claim. (Payment of temporary total compensation is addressed by this District Hearing Officer in the 1998 claim in a separate order.) * * *
23. The DHO's order of October 10, 2000 in the 1998 claim states:
 Payment of temporary total compensation is granted and shall be paid from 9/24/99 through 8/4/00. Payment of temporary total compensation beyond 8/4/00 is denied. Claimant was last paid temporary total compensation through 9/23/99 by Staff Hearing Officer order dated 4/17/00. District Hearing Officer finds there is sufficient medical evidence now on file from Dr. Lyon supporting that claimant was temporarily and totally disabled due to the allowed condition of fibromyalgia for the above-granted period. Specifically, the C-84's dated 1/25/00 and 6/26/00 and letters dated 5/30/00 and 6/26/00, are found to support payment of temporary total compensa-tion for this period.
24. Both DHO's orders of October 10, 2000, were administratively appealed.
25. On May 9, 2001, an SHO heard the administrative appeals from both DHO's orders. The SHO issued separate orders for each industrial claim.
26. The SHO's order of May 9, 2001 in the 1996 claim, affirms the DHO's order stating:
 The Staff Hearing Officer denies temporary total from 09/24/1999 through today's date, 05/09/2001.
 Payment of temporary total compensation from 09/24/1999 through 07/26/2000 is denied because the C-84's of Dr. Lyons [sic] consider conditions not allowed in this claim.
 Also, for the period of 04/18/2000 through 07/26/2000 temporary total disability is being paid by separate order in 98-621804.
27. The SHO's order of May 9, 2001 in the 1998 claim, modifies the DHO's order to the following extent:
 The Staff Hearing Officer finds that the District Hearing Officer order of 10/10/2000 relied, in part, upon the C-84 of Dr. Lyon dated 01/25/2000 to pay temporary total compensation from 09/24/1999 to 08/04/2000. The Staff Hearing Officer finds that the District Hearing Officer had no authority to rely upon that C-84 since it was part of the medical evidence on file at the time of the 04/17/2000 Staff Hearing Officer order which denied temporary total after 09/23/1999 based on the evidence then available from Dr. Lyon. [T]hat C-84 could not later be relied upon under Zamora v. Industrial Commission (1989), 450 So.3d 17.
 The District Hearing Officer also relied upon letters of Dr. Lyons [sic] dated 05/03/2000 and 06/26/2000 to support payment of temporary total disability. The Staff Hearing Officer finds that those reports do not provide a basis for payment of temporary total compensation. Those reports are only a physician's expression of frustration at what he believes are problems caused by the employer.
 Finally, the District Hearing Officer relied upon a C-84 dated 06/26/2000 from Dr. Lyons [sic]. The Staff Hearing Officer finds that, based on Hoover v. Industrial Commission (1995) 72 O.S.3d 387, that C-84 cannot be used to pay temporary total compensation for the period already denied (9/24/2000 through 04/17/2000).
 However, the Staff Hearing Officer finds that the a [sic] C-84 can be used for the period after the date of the last hearing.
 Therefore, based upon the C-84 of 06/26/2000 from Dr. Lyon, the claimant is granted payment of temporary total compensation from 04/18/2000 through 07/26/2000.
28. Relator administratively appealed both SHO's orders of May 9, 2001 to the commission. On June 7, 2001, another SHO, in separate orders, refused relator's administrative appeals from the SHO's orders of May 9, 2001.
29. On October 1, 2001, relator, Rosalie Stander, filed this mandamus action.
Conclusions of Law:
It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
Analysis begins with the observation that the commission's denial of TTD compensation beyond September 23, 1999 in the SHO's order of April 17, 2000, is a clear mistake of law, yet the effect of that TTD denial is the basis for the commission's subsequent refusal to award TTD compensation for the period September 23, 1999 to April 17, 2000 at issue here.
The SHO's order of April 17, 2000 states in part:
 The claimant switched to Dr. Lyon on or about 9/14/99. Dr. Lyon has not shown that he has limited his disability conditions to the conditions allowed in this claim, or why another MRI might be necessary to further evaluate the fibromyalgia condition. Therefore, further temporary total compensation is not payable past 9/23/99 at this time.
There were four reports from Dr. Lyon before the SHO at the April 17, 2000 hearing: (1) the September 14, 1999 narrative report; (2) the November 16, 1999 C-84; (3) the January 25, 2000 C-84; and (4) the April 3, 2000 C-84.
The April 17, 2000 SHO's order fails to identify any of Dr. Lyon's reports and fails to identify the conditions not allowed in the claim that Dr. Lyon has allegedly relied upon to support his disability certification.
The syllabus of State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203, states:
 In any order of the Industrial Commission granting or denying benefits to a claimant, the commission must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision.
The denial of TTD compensation beyond September 23, 1999 in the April 17, 2000 SHO's order is a violation of Noll. The order fails to specifically state what evidence has been relied upon and fails to briefly explain the reasoning for the decision. The failure to identify the condition or conditions allegedly contained in Dr. Lyon's reports that the SHO believed to indicate Dr. Lyon's reliance upon conditions not allowed in the claim is a clear violation of Noll. A Noll violation in the April 17, 2000 SHO's order is a clear mistake of law.
Moreover, while a claimant must always show the existence of a direct and causal relationship between his or her industrial injury and the claimed disability, nonallowed medical conditions cannot be used by the commission to advance or defeat a claim for compensation. State ex rel. Waddle v. Indus. Comm. (1993), 67 Ohio St.3d 452.
The mere presence of a nonallowed condition in a claim for TTD compensation does not in itself destroy the compensability of the claim, but claimant must meet his or her burden of showing that an allowed condition independently caused the disability. State ex rel. Bradley v. Indus. Comm. (1997), 77 Ohio St.3d 239, 242.
The C-84 dated January 25, 2000, certifies TTD in the 1998 claim based solely on "fibromyalgia," which is an allowed condition in the 1998 claim.
While the commission never cited to the C-84 dated November 16, 1999, it does certify TTD based upon fibromyalgia, shoulder tendonitis, and carpal tunnel syndrome. Shoulder tendonitis and carpal tunnel syndrome are not allowed conditions in the 1998 claim, but are conditions allowed in the 1996 claim.
Even if shoulder tendonitis and carpal tunnel syndrome can be viewed as nonallowed conditions for purposes of the adjudication of relator's October 21, 1999 motion for TTD beginning July 23, 1999 in the 1998 claim, there is no inconsistency between Dr. Lyon's certification that "fibromyalgia" independently causes TTD and his certification that "fibromyalgia, shoulder tendonitis, carpal tunnel syndrome" together cause TTD. Thus, the November 16, 1999 C-84 cannot be used to discredit the January 25, 2000 C-84 on the basis that conditions allowed in the 1996 claim were identified by Dr. Lyon as contributing to disability.
In his September 14, 1999 narrative report, Dr. Lyon indicates that relator does have a problem with her carpal tunnel syndrome. He also suggests further evaluation of the right shoulder. However, these discussions alone do not discredit the C-84 certification of January 25, 2000 that "fibromyalgia" independently causes TTD.
Dr. Lyon also indicates in his September 14, 1999 report that he is aware that relator had been diagnosed as having an "adjustment disorder." As previously noted, the 1998 industrial claim was additionally allowed for "adjustment disorder with mixed anxiety and depressed mood" following the April 17, 2000 hearing. Clearly, Dr. Lyon's reference to an "adjustment disorder" cannot be used to discredit Dr. Lyon's C-84 certification of disability based upon fibromyalgia.
While there does not appear to be any basis for discrediting Dr. Lyon's January 25, 2000 C-84 certification of TTD based upon Dr. Lyon's discussions of conditions not allowed in the 1998 claim, the magistrate recognizes that it is the commission that weighs the evidence. Accordingly, even though the commission subsequently relied upon Dr. Lyon's June 26, 2000 C-84 as some evidence supporting TTD beginning April 18, 2000, and thus found it to be credible, the commission should be allowed to issue a Noll and Waddle compliant order after it reweighs the medical evidence that was before the SHO at the April 17, 2000 hearing.
R.C. 4123.52 grants the commission continuing jurisdiction over its final orders. However, continuing jurisdiction is not unlimited. The Ohio Supreme Court has, by case law, defined the parameters of continuing jurisdiction. The commission has the authority, pursuant to R.C. 4123.52, to modify a prior order that is clearly a mistake of law. State ex rel. B C Machine Co. v. Indus. Comm. (1992), 65 Ohio St.3d 538, 542. Moreover, the commission can sua sponte exercise its continuing jurisdiction. State ex rel. Manns v. Indus. Comm. (1988),39 Ohio St.3d 188.
Here, the commission had the authority to correct its April 17, 2000 SHO's order when it was required to review the order with respect to relator's September 2000 motion for TTD beginning September 24, 1999 in the 1998 claim. However, the commission did not exercise its continuing jurisdiction over the April 17, 2000 order even though it had the authority, if not the duty, to do so.
In this action, relator does not directly raise the clear mistake of law in the April 17, 2000 order. Rather, relator attempts to limit the orders effect by emphasizing that it states that TTD compensation "is not payable past 9/23/99 at this time." (Emphasis added.) According to relator, the SHO used the phrase "at this time" to eliminate the res judicata effect of the commission's refusal to extend TTD compensation beyond September 23, 1999, based upon Dr. Lyon's reports. Relator thus suggests that Dr. Lyon's reports were not actually rejected by the April 17, 2000 SHO's order and that TTD compensation beyond September 23, 1999 was not actually denied. (See relator's reply brief.)
The flaw in relator's argument is quickly revealed by noting that the April 17, 2000 SHO's order does not award TTD past September 23, 1999, notwithstanding that relator submitted the reports of Dr. Lyon to support his request for TTD compensation beyond September 23, 1999. Clearly, Dr. Lyon's reports were rejected even though the commission's explanation for the rejection violates Noll and is a clear mistake of law.
If the SHO's order of April 17, 2000 is left to stand, then the commission correctly denied TTD compensation in the 1998 claim for the period September 23, 2000 to April 17, 2000, based upon the principles set forth in State ex rel. Zamora v. Indus. Comm. (1989), 45 Ohio St.3d 17, and State ex rel. Hoover Co. v. Indus. Comm. (1995), 72 Ohio St.3d 387.
If the denial of TTD compensation beyond September 23, 1999 in the April 17, 2000 SHO's order is found by this court to constitute error, then the basis for the commission's denial of TTD compensation in the SHO's order of May 9, 2001 in the 1998 claim is eliminated for purposes of this mandamus action.
When the commission's order of April 17, 2000 became final upon the commission's refusal to hear an appeal from that order, the commission's denial of TTD compensation beyond September 23, 1999, became actionable in mandamus. Rather than file a mandamus action at that time, relator chose to file identical motions and supporting evidence in both industrial claims. However, relator's failure to file a mandamus action earlier and his failure to request a correction of the clear mistake of law in the April 17, 2000 order, does not preclude this court from ordering the commission to correct the error in the April 17, 2000 order.
Civ.R. 54(C) provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded the relief in the pleadings." See Raimonde v. Van Ulereh (1975), 42 Ohio St.2d 21.
In this action, relator is entitled to a writ of mandamus that orders the commission to vacate that portion of the April 17, 2000 SHO's order that denies TTD compensation beyond September 23, 1999, and to enter an amended order that complies with Noll and Waddle, supra. This is so, even though relator has not specifically sought this relief in this action. Civ.R. 54(C).
Given that the commission must vacate that portion of its April 17, 2000 order denying TTD compensation beginning September 23, 1999, that portion of the SHO's order of May 9, 2001, that denies TTD compensation from September 24, 1999 to April 17, 2000 in the 1998 claim cannot stand. Obviously, if the April 17, 2000 denial of TTD compensation beyond September 23, 1999, is void on grounds that it is a clear mistake of law, there is no basis to apply Zamora or Hoover to limit or bar the commission's consideration of Dr. Lyon's reports.
As previously noted, in September 2000, relator filed identical motions in the 1996 and 1998 claims. The motions requested TTD compensation beginning September 24, 1999, citing Dr. Lyon's June 26, 2000 C-84 and his May 30, 2000 and June 26, 2000 narrative reports.
Dr. Lyon's June 26, 2000 C-84 certifies TTD from September 14, 1999 to August 4, 2000, based upon "fibromyalgia, depression, anxiety." On the form, Dr. Lyon also indicates that relator is being treated for carpal tunnel syndrome and shoulder tendonitis, but TTD is not certified based upon those two conditions.
Dr. Lyon's June 26, 2000 C-84 was submitted in support of TTD beginning September 24, 1999 in the 1996 claim. However, "fibromyalgia, depression, anxiety," are not conditions allowed in the 1996 claim.
In its May 9, 2001 order in the 1996 claim, the commission states:
 Payment of temporary total compensation from 09/24/1999 through 07/26/2000 is denied because the C-84's of Dr. Lyons [sic] consider conditions not allowed in this claim.
The May 9, 2001 order in the 1996 claim is correct. The conditions for which Dr. Lyon certifies TTD in the 1996 claim are not conditions allowed in the 1996 claim. They are indeed the conditions allowed in the 1998 claim.
In this action, relator suggests that the May 9, 2001 order denying TTD compensation in the 1996 claim is an abuse of discretion because the two industrial claims were heard together on the two motions. The magistrate disagrees with relator.
While relator did file identical motions in both industrial claims, he did not move the commission to combine the two industrial claims. Thus, the industrial claims remained separate claims even though the motions were heard by a single DHO and a single SHO. Given that the claims remain separate, the commission did not abuse its discretion in considering only the allowed conditions of the 1996 claim in adjudicating the motion for TTD compensation filed in the 1996 claim. Accordingly, the SHO's order of May 9, 2001 in the 1996 claim must stand.
Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its April 27, 2000 SHO's order to the extent that it denies TTD compensation beyond September 23, 1999, and to enter an amended order, consistent with this magistrate's decision, that complies with Noll and Waddle, supra. It is further the magistrate's decision that the writ of mandamus order the commission to vacate its May 9, 2001 SHO's order entered in the 1998 claim to the extent that it denies TTD compensation for the period September 24, 1999 through April 17, 2000, and to enter an amended order that is consistent with the amended order of April 17, 2000 that it shall enter.
[1] An April 20, 1999 letter from The Budd Co. to Dr. Lok indicates that right shoulder tendonitis and right carpal tunnel syndrome are certified for the 1998 claim. Following a July 12, 1999 hearing, a staff hearing officer deleted the conditions "right carpal tunnel syndrome; right shoulder tendonitis," from the 1998 claim, noting that the self-insured employer had certified those conditions for the 1996 claim.