DECISION
Relator, Amcast Industrial Corp., commenced this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order granting permanent total disability ("PTD") compensation to respondent, James Hall ("claimant"), and ordering the commission to deny claimant's application for such disability compensation.
Pursuant to Civ.R. 53 and Section (M), Loc.R.12 of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate notes that, although claimant had other disabling conditions, his treating physician, Dr. Bolz, specifically opined that claimant was permanently and totally disabled as a result of the alleged conditions alone. Therefore, the magistrate concluded that Dr. Bolz's report constitutes some competent, credible evidence upon which the commission relied, and relator did not demonstrate that the commission abused its discretion.
Relator has filed objections to the magistrate's decision, in part, rearguing those issues addressed by the magistrate. For the following reasons, as well as those set forth in the magistrate's decision, relator's objections are overruled.
Relator contends that the injuries claimant sustained in a 1992 automobile accident permanently removed claimant from the work force, thereby eliminating claimant's eligibility for permanent total benefits. However, as noted by the magistrate, relator presented no medical evidence to support this argument. Simply because the claimant did not work after the 1992 automobile accident does not establish that the injuries he sustained in that accident rendered him incapable of gainful employment. Nor does it establish that he retired from the work force.
Likewise, contrary to relator's contention, the commission did specify what evidence it relied on and briefly explained the reasoning for its decision. Although relator may disagree with the opinion of Dr. Bolz and the decision of the commission, it has not demonstrated that the commission abused its discretion or failed to comply with the requirements of State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
Following an independent review of this matter, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law to those facts. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled;
Writ of mandamus denied.
TYACK, P.J., and PETREE, J., concur.
 APPENDIX A IN MANDAMUS
Relator, Amcast Industrial Corp., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted permanent total disability ("PTD") compensation to respondent James Hall ("claimant") and ordering the commission to find that claimant is not entitled to PTD compensation.
Findings of Fact:
1. Claimant sustained a work-related injury on March 9, 1976, and his claim has been allowed for: "Fracture right tibial plateau and right fibula degenerative arthritis of lateral compartment of right knee."
2. Claimant has had several surgeries performed on his right knee. On March 17, 1976, claimant had surgery for open reduction and internal fixation with Webb bolts. At that time, the lateral meniscus was also removed. In 1985, claimant had arthroscopic surgery because of continuing problems with his right knee. In 1988, claimant had arthroscopy with abrasion chondroplasty and removal of internal fixation devices. In 1993, claimant had a diagnostic arthroscopy, a partial synovectomy, chondrectomy and abrasive arthroplasty to correct the posttraumtic arthritis which had developed as a result of his industrial injury. In 1995, claimant had total right knee replacement surgery. Following this surgery in 1995, claimant had an infection, wound necrosis and draining. In March 1995, claimant had surgery for debribement of the wound, arthrotomy and lavage.
3. In 1992, claimant was involved in an automobile accident wherein he sustained injuries which resulted in his left leg being amputated below the knee and a left total hip replacement.
4. On July 2, 1997, claimant filed an application for PTD compensation. At that time, claimant was sixty-four years old, had completed the eleventh grade, and had worked as a cook, laborer with responsibilities including shoveling sand, weight operator, bucket line and general labor as well as a janitor. Claimant last worked in 1992.
5. In support of his application, claimant submitted the May 29, 1997 report of Dr. W. Scott Bolz, who opined as follows:
 * * * He persists in marked effusion and edema around the knee and a 40° flexion contracture with the ability to flex only to 90°. This improved somewhat and when last seen on 1-15-97, he had an angle of greatest extension of 10° of flexion and could accomplish an angle of greatest flexion of 90°. He was still using ambulatory aids, still had moderate pain, and in my opinion, was permanently and totally disabled from the viewpoint of gainful employment based upon this injury alone, even though he has other disabling conditions.
6. Dr. Bolz is the doctor who performed the total right knee replacement in 1995, which was three years after the automobile accident which had injured claimant's left leg.
7. Claimant was examined by Dr. Seth H. Vogelstein, who issued a report dated January 14, 1998. Dr. Vogelstein conducted an independent medical examination and assessed a thirty-six percent whole person impairment due to claimant's allowed condition. Dr. Vogelstein concluded as follows:
 In my medical opinion Mr. Hall has a 36% whole person impairment. I do not believe that solely as a result of the allowed conditions in this claim that Mr. Hall has sustained a permanent and total impairment of his earning capacity such that he is unfit for any sustained remunerative employment. I do not feel that Mr. Hall is totally disabled. I feel that there are multiple sedentary positions that he could function at, even if in the worst case scenario, he required use of a wheelchair.
8. Claimant's application was heard before a staff hearing officer ("SHO") on May 14, 1998, and resulted in an order granting his application. The SHO relied upon the report of Dr. Bolz for the conclusion that claimant was unable to return to his former position of employment and unable to perform any type of sustained remunerative employment. However, assuming that claimant could perform sedentary work based on Dr. Vogelstein's report, the SHO considered the claimant's disability factors and stated as follows:
 Therefore, a brief review of claimant's disability factors is in order. The record reveals that the claimant is 64 years old, he has an 11th grade education, and he previously worked as a custodian and cook.
 It can be initially seen that because claimant's job history has been in the non-sedentary range that he doesn't have any transferable skills for sedentary work. Further, because of his advanced age and limited education the claimant would be a very poor candidate for retraining such that he could eventually qualify for sedentary work. Consequently, his disability factors objectively viewed preclude claimant from presently or in the future qualifying for sedentary work.
 Being that the claimant is vocationally disqualified from performing sedentary work, which is the only type of work he could physically perform, he is declared permanently totally disabled on that basis as well as the reasons previously stated.
9. Relator filed a request for reconsideration from the order of the SHO contending that the SHO failed to take into account the automobile accident which claimant sustained in 1992, and that it was this 1992 accident which damaged claimant's left leg which causes him to be currently disabled and not the allowed conditions.
10. Relator's request for reconsideration was denied by order of the commission mailed July 9, 1998.
11. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994),68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
Relator contends that the commission's order is not supported by some competent credible evidence and it does not comply with the requirements of Noll. Specifically, relator contends that the record is clear that any disability claimant suffers which prevents him from returning to either his former position of employment or to other employment is a direct result of the 1992 automobile accident and is not related to the injury he sustained at work. Relator points out that claimant had the most substantial of his knee surgeries performed after the automobile accident. Relator contends that the amputation of claimant's left leg has placed so much additional stress on his right leg that claimant has more problems with his right leg. As a result, relator contends that claimant is not precluded from performing some sustained remunerative employment as a direct result of the allowed conditions from the industrial injury in 1976.
The commission specifically relied upon the May 29, 1997 report of Dr. Bolz. Dr. Bolz and his partner, Dr. J. John Bock, had been treating claimant since his 1976 injury. When Dr. Bolz performed the surgery in 1995 replacing relator's right knee, he was obviously aware that claimant had sustained an amputation of the left leg below the knee. As such, it is clear from the record that Dr. Bolz is aware of the other disabling conditions from which claimant suffers. Dr. Bolz was not required to discuss the other disability conditions. In his report, Dr. Bolz specifically stated that it was his opinion that claimant was permanently and totally disabled based upon the injury to his right knee alone even though claimant has other disabling conditions. Given the fact that Dr. Bolz was aware of claimant's other conditions, his report does constitute some competent credible medical evidence upon which the commission could rightfully rely in granting claimant's application for PTD compensation. As such, this portion of relator's argument fails.
At the hearing, claimant was specifically asked questions about his right knee and the amount of pain associated with his right knee as well as his difficulties in bearing weight and ambulating due to his right knee. Claimant was asked about his left leg and claimant testified that the prosthetic device does not give him any problems. He testified that he uses crutches because he is only able to bear minimal weight on his right knee and cannot walk without them. Counsel for relator argued that claimant was downplaying the left leg injury and that clearly the left leg injury has caused claimant to put additional weight on his right leg and that claimant's current problems with his right leg are due solely to the automobile accident in 1992, and the amputation of his left leg below the knee. Within the context of this argument, relator also asserts that claimant retired from the workforce as a result of his 1992 automobile accident and that that event should bar him from receiving PTD compensation.
First, with regard to the argument that claimant retired as a result of the 1992 injury, relator failed to raise this issue before the SHO and cannot raise that issue for the first time here. The commission cannot abuse its discretion by failing to consider and determine an issue which was not presented to it. See State ex rel. Jones Laughlin Steel Corp. v. Indus. Comm. (1985), 29 Ohio App.3d 145.
Secondly, although relator made a brief argument in front of the SHO that claimant's 1992 automobile accident and resulting amputation of his left leg is an intervening injury, relator has not presented any medical evidence in support of this argument. In his January 14, 1998 report, Dr. Vogelstein discusses the fact that claimant had his left leg amputated below the knee and the fact that the total knee replacement occurred later, in 1995. However, nowhere in that report does Dr. Vogelstein opine that the problems which claimant is currently having with his right knee are a direct result of his being forced to bear greater weight on it after having the left leg amputated. In State ex rel. Waddle v. Indus. Comm. (1993), 67 Ohio St.3d 452, 457, the court noted that as long as the allowed condition alone was permanently and totally disabling, the existence of a separate nonindustrial disability does not bar a claimant from receiving PTD compensation.
In the present case, Dr. Bolz opined that claimant was permanently and totally disabled as a result of the allowed conditions arising from the 1976 injury in spite of the other disabling conditions from which he suffered. Dr. Bolz's report constitutes some competent credible medical evidence upon which the commission relied and relator has not demonstrated that the commission abused its discretion.
Based on the foregoing, this magistrate finds that relator has not demonstrated that the commission abused its discretion in granting permanent total disability compensation to claimant and relator's request for a writ of mandamus should be denied.