DECISION
{¶ 1} Relator, Cuyahoga Metropolitan Housing Authority, commenced this original action requesting a writ of mandamus that orders respondent Industrial *Page 2 
Commission of Ohio to vacate its order granting permanent total disability compensation to respondent Marshall D. Henderson and to find claimant is not entitled to that award.
 {¶ 2} Pursuant to Civ. R. 53 and Section (M), Loc. R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision the magistrate determined (1) the commission did not abuse its discretion in relying on the reports of Drs. Harris and Nemunaitis, (2) the commission did not abuse its discretion in not relying on the reports of Drs. Roth and Kepple, (3) the commission did not abuse its discretion in failing to address the nonmedical factors, and (4) the commission's order complies with the requirements of State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203. Accordingly, the magistrate determined the requested writ should be denied.
 {¶ 3} Relator filed objections to the magistrate's conclusions of law:
 1. The Magistrate erroneously denied CMHA's request for a writ of mandamus, in that the medical reports of Dr. Harris and Dr. Nemunaitis are not competent evidence upon which the Industrial Commission could have relied in granting the Claimant's PTD Application.
 2. The Magistrate improperly took judicial notice regarding the issue of the damage a person sustains from a myocardial infarction (heart attack).
 3. The Magistrate erred by concluding that the terms "hypokinesis" and "ejection fraction" describe the effects of a heart attack on the heart muscle, and by concluding that these conditions do not necessarily refer to the non-allowed condition of "heart failure."
 4. The Magistrate erred by concluding that both Drs. Harris and Nemunaitis confined their opinions to the allowed conditions of myocardial infarction and ischemic myocardiopathy. *Page 3 
 5. The Magistrate erred by concluding that the Commission's order complies with Noll.
 {¶ 4} Relator's objections raise three issues: (1) whether the reports of Drs. Harris and Nemunaitis are some evidence on which the commission could rely, (2) whether the commission's order complies withNoll, and (3) whether the magistrate improperly took judicial notice of matters concerning claimant's myocardial infarction.
I. Reports of Drs. Harris and Nemunaitis {¶ 5} Relator contends the reports of Drs. Harris and Nemunaitis are not evidence on which the commission could rely because both doctors premised their respective opinions on nonallowed conditions. Contrary to relator's contentions, Dr. Harris and Dr. Nemunaitis each based his opinion on claimant's allowed conditions.
 {¶ 6} The commission stated it relied on the November 6, 2006 report of Dr. Harris. In it, Dr. Harris stated that "based upon the allowed conditions of this claim, myocardial infarction and ischemic myocardiopathy, Mr. Henderson, is permanently and totally disabled from any type of remunerative employment." (Report of Dr. Harris, at 3.)
 {¶ 7} The commission also premised its decision on the July 16, 2007 report of Dr. Nemunaitis. In his July 16, 2007 report, Dr. Nemunaitis stated that "[b]ased on examination today, the injured worker is not capable of physical work activity at any capacity as relates to the allowed conditions." (Report of Dr. Nemunaitis, at 5.)
 {¶ 8} Because both doctors confined their opinions to the allowed conditions of claimant's claim, their reports constitute evidence on which the commission could rely. *Page 4 
II. Noll {¶ 9} Relator also asserts the commission's order is deficient because it fails to comply with the requirements of Noll. As the magistrate properly concluded, the commission is not required to consider the nonmedical disability factors when it determines a claimant is incapable of performing any sustained remunerative employment at any exertion level. See State ex rel. Galion Mfg. Div., Dresser Industries, Inc. v.Haygood (1991), 60 Ohio St.3d 38.
 {¶ 10} Accordingly, the commission was not required to consider the nonmedical disability factors in this instance, and it therefore did not abuse its discretion in failing to do so.
III. Judicial Notice {¶ 11} Lastly, relator argues the magistrate improperly relied on judicial notice to support the commission's decision. The magistrate's reliance on judicial notice was unnecessary, as the reports of Drs. Harris and Nemunaitis both support the commission's decision.
 {¶ 12} Accordingly, we decline to take judicial notice of the materials set forth in the magistrate's decision, rendering moot relator's objections addressed to the issue of judicial notice. Instead, we resolve relator's request for a writ of mandamus on the basis of the commission's reliance on the reports of Drs. Harris and Nemunaitis, which both support the commission's decision.
 {¶ 13} Given our resolution of each of the three issues raised in relator's objections, we overrule relator's first, fourth, and fifth objections, rendering its second and third objections moot. *Page 5 
 {¶ 14} Following independent review pursuant to Civ. R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them, with the noted exception concerning her discussion of judicial notice. Accordingly, we adopt the magistrate's decision, including the findings of fact and conclusions of law, but omitting the magistrate's discussion and conclusions regarding judicial notice. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled in part; moot in part; writ denied.
 FRENCH, P.J., and KLATT, J., concur. *Page 6 APPENDIX A MAGISTRATE'S DECISION {¶ 15} Relator, Cuyahoga Metropolitan Housing Authority, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted permanent total *Page 7 
disability ("PTD") compensation to respondent Marshall D. Henderson ("claimant") and ordering the commission to find that claimant is not entitled to that award.
Findings of Fact: {¶ 16} 1. On January 8, 2003, claimant sustained an acute myocardial infarction in the course and scope of his employment with relator. Claimant's claim has been allowed for "myocardial infarction; ischemic myocardiopathy." Claimant's claim has been disallowed for "heart failure." Claimant also has two other claims with this employer and those claims have been allowed for "left elbow epicondylitis and left shoulder impingement [and] left carpal tunnel syndrome."
 {¶ 17} 2. Relator's treating physician, Mark Roth, M.D., completed a Physician's Report of Work Ability on May 16, 2006. At that time, Dr. Roth estimated that claimant would be able to return to work without restrictions on October 1, 2006. Dr. Roth indicated that claimant could occasionally lift up to 20 pounds, but no more than that. He stated further that claimant has a chronic cardiac condition requiring medication which has caused certain adverse effects.
 {¶ 18} 3. In October 2007, claimant filed an application for PTD compensation supported by the November 6, 2006 report of Allan H. Harris, M.D. In the history portion of his report, Dr. Harris noted:
 * * * The myocardial infarction was somewhat complicated and Mr. Henderson developed ischemic myocardiopathy. * * * His major symptom has been shortness of breath and marked fatigue. He attempted to return to work in mid 2005 however, due to the marked fatigue and shortness of breath he could not meet his obligations as a painter. He has not worked since of [sic] April of 2005. *Page 8 
 He states that despite medication * * *, he continues to experience marked fatigue and shortness of breath. He cannot walk out of doors in the winter time and, although he uses a treadmill he has marked difficulty walking on the treadmill.
 In April of 2005 a cardiac stress test was positive and he underwent a cardiac catheterization. At that time it was necessary to place a stent and he was told that he had an additional "silent" heart attack. At that time his ejection fraction was 30 percent. As mentioned above, he continues to experience dizziness and marked fatigue especially when attempting to walk out of doors. Cardiac catheterization confirmed global hypokinesis with hypokinesis of the inferior wall, apex, lateral wall and anterior wall.
Dr. Harris concluded as follows:
 Mr. Henderson's allowed conditions of myocardial infarction and ischemic myocardiopathy have worsened since his last examination. He states that his shortness of breath and fatigue have not improved in fact, they have somewhat worsened. This is consistent with his inability to carryon [sic] any significant type of physical activity. * * * Therefore, based upon the allowed conditions of this claim, myocardial infarction and ischemic myocardiopathy, Mr. Henderson, is permanently and totally disabled from any type of remunerative employment. Despite medical intervention he will not improve in the future.
 {¶ 19} 4. Claimant was examined by John G. Nemunaitis, M.D., a commission specialist. In his July 16, 2007 report, Dr. Nemunaitis opined that claimant's allowed conditions had reached maximum medical improvement, assessed a 41 percent whole person impairment, and concluded that claimant was incapable of performing any sustained remunerative employment. In that regard, Dr. Nemunaitis explained as follows:
 * * * Based on the medical information provided, the injured worker does not have significant residual impairments associated with his shoulder, elbow or carpal tunnel problems, however, the injured worker does have significant cardiac risks. As pointed out by his cardiologist, the injured worker's *Page 9 
most recent ejection fraction was 30%, which does offer significant cardiac risk. The injured worker is at risk, as stated, for cardiac arrhythmias. He has marked fatigue and also appears to have symptoms of dizziness and lightheadedness that may also relate to the reduced ejection fraction.
 Therefore, based on examination today, the injured worker is not capable of work functioning in light of his cardiac risks. The injured worker has reached MM I.
 {¶ 20} 5. The record also contains the March 29, 2007 report of Richard N. Kepple, M.D., who examined claimant at relator's request. Dr. Kepple concluded that claimant was not permanently and totally disabled and stated that, in his opinion, claimant would be capable of performing some sustained remunerative employment within the restrictions set forth by Dr. Roth on May 16, 2006.
 {¶ 21} 6. Claimant's application was heard before a staff hearing officer ("SHO") on November 29, 2007. The SHO granted claimant's request for PTD compensation as follows:
 Permanent and total disability compensation is hereby awarded from 11/06/2006 and to continue without suspension unless future facts or circumstances should warrant the stopping of the award; and that payment be made pursuant to Ohio Revised Code Section 4123.58(A).
 This award shall be reduced by any outstanding overpayment of prior compensation and/or compensation previously paid over the award period now granted by this order.
 The Staff Hearing Officer relies on the report[s] of Dr. Harris, 11/06/2006 and Dr. Nemunaitis, 07/16/2007 who found that the claimant is prevented from returning to any sustained, remunerative employment as a result of the conditions allowed in claim 03-840807: myocardial infarction and ischemic myocardiopathy. *Page 10 
 {¶ 22} 7. Relator's request for reconsideration was denied by order of the commission mailed February 1, 2008.
 {¶ 23} 8. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 24} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 25} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. *Page 11 Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 26} In this mandamus action, relator argues that the commission abused its discretion by relying upon the reports of Drs. Harris and Nemunaitis because those doctors based their opinion that claimant was permanently and totally disabled on nonallowed conditions. Relator also argues that the commission abused its discretion by not considering and relying upon the reports of Drs. Roth and Kepple. Third, relator contends that the commission abused its discretion by failing to address the nonmedical factors. And, lastly, relator contends that the commission's order does not comply with the requirements ofNoll.
 {¶ 27} For the reasons that follow, it is this magistrate's decision that relator's request for a writ of mandamus should be denied.
 {¶ 28} Relator first argues that the commission abused its discretion in relying upon the reports of Drs. Harris and Nemunaitis on grounds that those physicians based their opinions, in part, on nonallowed or disallowed conditions. Relator points out that claimant's claim has been specifically disallowed for the condition of "heart failure," and argues that both doctors based their opinions, in part, upon this condition. Specifically, relator points to the following statements Dr. Harris made in his report: during the cardiac catheterization, claimant sustained an additional "silent" heart attack; in April 2005, claimant's ejection fraction was 30 percent; and the cardiac catheterization confirmed global hypokinesis with hypokinesis of the inferior wall, apex, lateral wall and anterior wall. With regards to the report of Dr. Nemunaitis, relator points out that Dr. Nemunaitis stated *Page 12 
that, at the time of the cardiac catheterization in 2005, claimant's ejection fraction was 30 percent and his cardiologist opined that this percentage may explain claimant's current symptoms of lightheadedness and dizziness associated with hypokinesis of the inferior wall, apex, lateral wall and anterior wall with mild global hypokinesis. Relator argues that hypokinesis is not an allowed condition and that one's ejection fraction actually corresponds to heart failure. For the reasons that follow, this magistrate disagrees with relator's interpretation of those medical reports.
 {¶ 29} First, this court can take judicial notice of the fact that the heart is essentially a muscle and that, when a person suffers a myocardial infarction (heart attack), the heart muscle becomes permanently damaged. As such, the heart does not function as well as it should and as well as it did previously. Because the function of the heart is to pump blood through the body, following a heart attack, the heart does not perform as well as it should. Ischemic myocardiopathy is a condition involving "inadequate circulation of blood to the myocardium" ("middle layer of the heart, consisting of cardiacmuscle"). Stedman's Medical Dictionary (3 Ed. 1972) 650, 820. (Emphasis sic.) The diagnosis of this condition is made only if tests reveal that the pumping function of the heart is too low. The term "hypokinesis" is defined to mean "diminished or slow movement," and generally refers to decreased contractile function of the left ventricle. Id. at 608. In other words, the damage to the heart muscle caused by the heart attack has impaired the heart's ability to pump blood through the body. Further, the term "ejection fraction" refers to the fraction of blood pumped out of the ventricle with each heartbeat. Apparently, when the heart muscle contracts, it never pumps out all of the blood in the ventricle. Instead, some blood always remains. All of these terms describe the effects of a heart attack on the heart muscle and *Page 13 
do not necessarily refer to the nonallowed condition of "heart failure." If allowed conditions alone cause the disability, it is immaterial if a doctor discusses nonallowed conditions in their report. State ex rel.Waddle v. Indus. Comm. (1993), 67 Ohio St.3d 452. Furthermore, both Drs. Harris and Nemunaitis specifically confined their opinions to the allowed conditions of myocardial infarction and ischemic myocardiopathy. As such, to the extent that one might construe these terms as additional conditions and not simply the resulting symptoms of the allowed conditions, a doctor's report is not removed from evidentiary consideration simply because the doctor mentions nonallowed conditions. Where, as here, the doctors confine their opinions solely to the allowed conditions, those reports can constitute "some evidence" upon which the commission may properly rely.
 {¶ 30} Based upon a review of the reports of Drs. Harris and Nemunaitis, it is this magistrate's decision that those doctors confined their opinions solely to the allowed conditions and the commission did not abuse its discretion by relying on them.
 {¶ 31} Relator's next argument is that the commission abused its discretion by failing to consider and rely on the reports of Drs. Roth and Kepple. The commission is only required to enumerate the evidence relied upon and is not required to explain why one report is relied upon while another report is not. See State ex rel. Fultz v. Indus.Comm. (1994), 69 Ohio St.3d 327; State ex rel. DeMint v. Indus.Comm. (1990), 49 Ohio St.3d 19; and State ex rel. Bell v. Indus.Comm. (1995), 72 Ohio St.3d 575. The commission was not required to explain why it did not rely on these two reports.
 {¶ 32} Lastly, relator contends that the commission abused its discretion by not addressing the nonmedical disability factors and that the commission's order does not comply with Noll. When the commission determines that a claimant is incapable of *Page 14 
performing any sustained remunerative employment at any exertion level, the commission is not required to consider the nonmedical disability factors. Those factors are only considered if the commission determines that the claimant has the physical capacity to perform at some level. In the present case, the commission concluded that claimant was incapable of even sedentary employment and was not required to address the nonmedical disability factors. Relator's Noll argument centers on relator's premise that the commission did not consider the reports of Drs. Roth and Kepple. As stated previously, the commission is only required to list the evidence upon which it relies and is not obligated to explain why certain evidence is not found persuasive.
 {¶ 33} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion by relying on the reports of Drs. Harris and Nemunaitis and in granting claimant PTD compensation and relator's request for a writ of mandamus should be denied.